KLINGAMAN, ET AL. *v.* BURCH

[No. 27,342. Filed March 25, 1940.]

*Roy Sheneman,* of Walkerton; and *Henry M. Dowling,* of Indianapolis, for appellants.

*Walter R. Arnold* and *Robert Grant,* both of South Bend, for appellee.

ROLL, J.—Appellee by this action sought to quiet title to certain described real estate, located in the town of Walkerton, Indiana. A jury returned a, favorable verdict to appellee, and appellant, on appeal, presents the question of the sufficiency of the evidence, and the correctness of certain instructions given to the jury.

The undisputed evidence shows that John W. Paul, prior to his death and on January 23, 1935, and prior thereto, was the owner in fee simple of the real estate here in question, also other real estate. In January 1935, Mr. Paul went to the office of Florence C. Morris, an attorney at law, located in the town of Walkerton, and requested her to prepare four real estate deeds, affecting three separate pieces of real estate, the fee simple title to which was in his name. One lot he desired to be conveyed to a trustee, and reconveyed to himself and wife as tenants by the entirety. A farm of 60 acres he wanted to deed to his daughter, Greta Klingaman; and the third, a house and lot in the town of Walkerton, he wanted to deed to Wilda Burch, his stepdaughter, appellee herein. As to the second and third pieces of real estate, the grantor reserved to himself a life estate therein. The attorney prepared the deeds as directed, and on January 23, 1935, Mr. Paul came to the office of the attorney to sign the deeds. Mr. Paul was unable to sign his name, and he signed by mark, duly witnessed. After the deeds were signed as above stated, Mr. Paul, Florence C. Morris, the attorney, and Wilda Burch drove to the home of Mr. and Mrs. Paul for the purpose of having Mrs. Paul sign the deeds. At the home of the grantor, Mr. and Mrs. Paul, Florence C. Morris, and Wilda Burch gathered around the dining room table. Florence C. Morris read the deed, purporting to convey the real estate to Wilda Burch, to Mrs. Paul, and within the hearing of the others present. After Mrs. Morris read the deed she handed it to Mrs. Paul who signed it. Then the other deeds were read to and signed by Mrs. Paul. All the deeds were acknowledged before Florence C. Morris, as a Notary Public. Immediately after the deeds had been read, signed, and acknowledged, the deed to Wilda

Burch was given to John W. Paul, who took the deed and pitched it across the table where Wilda Burch was standing, and said, "Here Wilda, this is yours." There was no evidence as to what further occurred there because appellant objected to Wilda Burch testifying on the ground that she was an incompetent witness; the objection was sustained. After the death of John W. Paul, the deed was found in the lock box of the decedent. Before the death of John W. Paul, and after the deeds had been executed, the said John W. Paul stated on different occasions that he had deeded the "large house" (meaning the specific property here in question) to Wilda Burch, and that she was the owner. On one occasion, when asked if he were interested in selling the "big house," he answered that he could not sell it because he had deeded it to Wilda.

Appellant says that the verdict is not supported by sufficient evidence, and that the verdict is contrary to law because there is no evidence that the deed was ever delivered or that Wilda Burch accepted the gift, and that in the absence of such a showing appellee is not entitled to a verdict.

In all disputes as to whether or not a deed has been delivered, the most important inquiry is to ascertain the intent of the grantor, in the act or several acts, which, it may be claimed, constitute a delivery. Did he intend to part with all control over the deed? Did he intend to divest himself of the title and lodge it in the grantee?

A deed may be delivered by any act or word, or both, evincing the intention of the grantor to deliver it. The law does not prescribe any particular form of words or actions as necessary to constitute a delivery. Anything done or said by the grantor from which it is apparent that a delivery is thereby

intended, either by words or acts, or by both combined, is sufficient. *Berry* v. *Anderson,* 22 Ind. 36. The question of delivery is much a fact to be determined by the jury. *Dearmond* v. *Dearmond,* 10 Ind. 191. In the case of *Vaughan* v. *Godman,* 94 Ind. 191, the court quoted with approval the following excerpt from *Thatcher* v. *St. Andrew's Church,* 37 Mich. 264.

> "The act of delivery is not necessarily a transfer of the possession of the instrument to the grantee and an acceptance by him, but it is the act of the grantor, indicated either by acts or words or both, which shows an intention on his part to perfect the transaction, by a surrender of the instrument to the grantee, or to some third person for his use and benefit."

This case at bar was tried by a jury, and their verdict was in favor of appellee. By their verdict they found from the evidence that the grantor delivered the deed. Appellant says that the evidence is insufficient to support the verdict. An appellate court, in determining whether the evidence is sufficient to support a verdict for the plaintiff, will, laying aside defendant's controverting evidence, assume that plaintiff's evidence is true, and will give to it every favorable inference which may be reasonably and fairly drawn from it. *Mazelin* v. *Rouyer* (1893), 8 Ind. App. 27; *Chicago, etc. R. Co.* v. *Vandenburg* (1905), 164 Ind. 470.

Applying the above rules of law to the facts here presented, we are convinced that the evidence is sufficient to support the verdict on the question of delivery.

But appellant contends that there is no evidence that appellee accepted the deed, and that the title did not pass unless there was an acceptance of the deed by the appellee from the grantor.

It is true that there was no direct proof that appellee accepted the deed when it was offered to her. We find in many decisions, and in many text books expressions to the effect that one of the essential elements to prove a valid gift inter vivos, is acceptance.

It must be noted that the claimed gift was wholly beneficial to the grantee. No burden or obligation whatever was imposed by the gift, and the rights of intervening creditors are not involved. In the notes to *Brown* v. *Westerfield*, 47 Neb. 399, 53 Am. St. Rep., 532-552, it is said:

> "The acceptance of a deed, delivered to a stranger for the use and benefit of the grantee, makes it operative from the time of delivery; . . . (citing cases) even though the grantee is ignorant of its existence, for the law will presume, if nothing appears to the contrary, that a man will accept what is for his benefit, as we have elsewhere shown:"

In *Beaver* v. *Beaver*, 117 N. Y. 421, 15 Am. St. Rep. 531, the court said:

> "The acceptance also may be implied where the gift, otherwise complete, is beneficial to the donee."

In *Olds* v. *Powell*, 7 Alabama (N. S.) 652, the court had under consideration the question of whether a negro slave was a gift or a loan. The court in disposing of the question said:

> "It is not easy to conceive of any more conclusive mode of ascertaining the intention, than by the declaration of the donor, at, or about the time; and this is not strenuously denied by the counsel for the plaintiff in error, but he insists that the donee is not affected by such declarations limiting the estate, unless made in his presence, or at least, unless a knowledge of them is brought home to him. This objection is founded upon a misapprehension of the true nature of such contracts as

this. It is true, that in every contract the assent of the minds of both parties is necessary to its consummation; but in the case of a donation, whether of the entire interest, or of a less estate, the assent of the donee is presumed; as he is the party to be benefited. He is passive, the donor acts; to the acts of the donor we must look therefore, to ascertain its true character; and it is wholly unimportant, whether the donee is present or not, at the time of the declaration, or act, which manifests the character of the donation. It must be very rare, that in such cases, the real nature of the transaction would not be understood, although there was no actual communication, between the father-in-law and son-in-law; but if any doubt did exist, it would be the duty of the latter, to inquire and ascertain its nature."

Indiana is in accord with the principle stated in the above cases. It is well settled in this state and conceded by appellant that acceptance by the donee need not be proven in case the donee be an infant or under other legal disability, or in case the instrument of title be placed on record or given to a trustee for the donee, in which event the acceptance will be presumed. Appellant very earnestly contends that the rule does not apply to the facts present here. It is urged that the law does not presume acceptance on the part of the donee except in the cases above mentioned. We can see no logical reason for not applying the rule of presumptive acceptance to this case. 28 C. J. § 75, p. 672, states the rule thus:

"The acceptance of a gift, beneficial to the donee and otherwise complete, will be presumed, unless the contrary is made to appear, even though the donee did not know of the gift at the time it was made. The rule is especially applicable where the donee is laboring under some disability. Thus, where a gift made to an infant is beneficial, and not burdensome, the law will presume acceptance, or as some courts say, 'the law accepts it for him.'

Where acceptance carries with it the assumption of onerous burdens, the rule does not apply."

American Jurisprudence, Vol. 24, § 117, p. 792, states the rule as follows:

"Acceptance by the donee may be implied or presumed, especially if it operates entirely to the benefit of the donee, or if the donee is mentally incapable of accepting it, or if the gift is from parent to child. The presumption, however prevails only in the absence of evidence of renunciation. The donee may, notwithstanding the presumption, renounce the gift, and thereby nonacceptance is proved."

In *Warner etc. Admrs.* v. *Keiser etc. Exrs.* (1931), 93 Ind. App. 547-559, the court said:

"If the gift is beneficial in its character, its acceptance by the donee will be presumed, and this presumption will prevail unless removed by facts and circumstances showing the contrary, and when the gift is made to a third person as trustee for the donee, the presumption prevails, even though the gift is made without the knowledge of the donee."

Wilda Burch was the donee. She was the stepdaughter of the donor, and the records shows that their relation was very close, very much akin to that of parent and child. All the parties were present when the deed was read aloud. Mr. and Mrs. Paul and Wilda Burch were present when the deed was read by Mrs. Morris. All knew the contents of the instrument. Immediately after it was signed by Mr. and Mrs. Paul, Mr. Paul took the deed and pitched it across the table to Wilda Burch saying at the same time, "Here Wilda, this is yours." Wilda Burch was passive in the matter. Mr. Paul was the one who was doing the acting. The transaction was completed, and there remained nothing further to do to complete the transfer of title.

From all the evidence shown by the record we are quite convinced that the verdict of the jury is sustained by sufficient evidence and not contrary to law.

The questions of delivery and acceptance as above stated are the substantial questions presented by the record and briefs. While the question is presented in different forms, we think that what we have heretofore said disposes of all questions presented.

We find no reversible error.

Judgment affirmed.

NOTE: Reported in 25 N. E. (2d) 996.