LEWIS *v.* BURKE, EX. OF THE ESTATE OF GRACE COPELAND.

[No. 31,175. Filed May 16, 1967. Rehearing denied June 20, 1967.]

298

*Hartell Denmure,* of Aurora, and *Robert S. Justice,* of Logansport, for appellant.

*Chester R. Callis,* of Vevay, *Cooper, Cooper, Cooper & Cox,* of Madison, and *Frank E. Spencer,* of Indianapolis, for appellee.

ARTERBURN, C. J.—This case comes to us on transfer from the Appellate Court. (See 214 N. E. 2d 186 for opinion of Appellate Court.)

The petition to transfer is now granted.

This is an appeal from denial of a petition of the appellant against the estate of Grace L. Copeland, deceased, in which the appellant claims ownership of household goods and furnishings located in the decedent's home in Vevay, Indiana. The claim is made by virtue of an alleged gift the decedent made prior to her death.

The appellee first contends that the petition filed for recovery of the specific property was not in proper form since the petition did not comply with the Probate Code (Burns' Ind. Stat. Anno. § 7-802 [1953 Repl.]) under which an affidavit is required stating that there are no setoffs, credits or deductions to which the estate is entitled. Appellee cites no authorities to support such a contention. Admittedly, the petition for this personal property was not filed under Burns' Ind. State. Anno. § 7-802 (1953 Repl.) as a claim, but rather under Acts 1953, ch. 112, § 1421, p. 295, being Burns' Ind. Stat. Anno. § 7-821 (1953 Repl.), which provides as follows:

"When any person claims any interest in any property in the possession of the personal representative adverse to the estate he may file, prior to the expiration of six (6) months after the date of the first published notice to creditors, a petition with the court having jurisdiction of the estate setting out the facts concerning such interest and thereupon the court shall cause such notice to be given to such parties as it deems proper and the case shall be set for trial and tried as in ordinary civil actions."

This is a new provision under the Probate Code, and the obvious purpose of this provision was to provide a remedy to those persons who claimed specific personal property which happened to be in the possession of the decedent at the time of the decedent's death. Under the law prior to the Probate Code, the normal remedy was merely a claim to be paid in money for the value of the property. This was not always an adequate remedy, particularly if the estate was insolvent or the owner of the property desired the specific property because of its peculiar value. The new section (Burns' Ind. Stat. Anno. § 7-821 [1953 Repl.]) of the Probate Code provides the same remedy against an estate as one might have in an action of replevin against an individual, namely, recovery of specific personal property. We therefore cannot agree with the contention of the appellee.

The brief of the appellee states:

"The Appellee is in agreement with the Appellant as to the fundamental question facing the Court in this case, which is whether the decedent, Grace L. Copeland, made a complete gift inter vivos of her household goods to George C. Lewis, the Appellant, by her letter of May 9, 1957."

We therefore take up at this point the primary question in this case. It appears from the evidence the decedent, Grace L. Copeland, went to the law office of Hillis & Hillis, Logansport, Indiana, and under the advice of the attorneys, prepared and signed in the presence of two witnesses, the following letter:

"HILLIS & HILLIS
Attorneys at Law
Fourth and North Sts.
Logansport, Indiana

May 9, 1957

"George C. Lewis
203 Twenty-sixth Street
Logansport, Indiana

My dear George:

I am writing this letter to you to confirm my promises and statements heretofore made to you about the furnishings and contents of the home in Vevay in which I am now living and where I have lived for forty odd years in the past.

These furnishings and the contents of my home are all yours, and I know you will get great pleasure and enjoyment out of them.

There are many items that your wife will like and will really appreciate. So I want Elva to enjoy these many fine items that are in my home.

Right now you and your wife are helping me in my time of need—and it will be a pleasure for me to know in my life time that it is George and Elva who now know that the things that gave great satisfaction to Dr. Copeland in his life time, and to me for so many years, are yours and that you folks can live in my home and enjoy the many articles that Doctor and I enjoyed.

So all these items are yours now and you take them whenever you want to.

With all my love and best wishes.

/s/ Grace L. Copeland

WITNESS:
/s/ Marylin Wikle
/s/ Jennifer Wallace"

Both witnesses to this letter or instrument appeared at the trial and testified to its authenticity. The evidence further shows that Mrs. Copeland lived in Vevay, Indiana, while Mr. Lewis lived in the northern part of the state, and most of the furnishings and contents for a house remained in her home until her death approximately three years later.

The evidence shows that, at or prior to the time of Mrs. Copeland's death, the appellant, George C. Lewis, had possession of the letter and instrument of May 9, 1957. There is no evidence that Mrs. Copeland, the decedent, or her attorneys retained the possession of such letter. Possession of the deed of gift, or a deed in the case of real estate raises a presumption of acceptance and delivery of the same. *Klingaman* v. *Burch* (1940), 216 Ind. 695, 25 N. E. 2d 996.

The main contention of the estate is that a gift of tangible personal property cannot be made by a written instrument or deed of gift; that delivery of the personal property, symbolically or totally, must take place regardless of any written insrument.

Historically, in the days when few people could write, formal ceremonies and physical acts in the presence of witnesses were given legal significance. Delivery of personal property was one form of making a gift or of transfering title. This was true in the case of real estate, where livery of seisin was necessary to transfer ownership of real estate. As people became more literate and writing became more common, deeds and written instruments replaced largely these physical ceremonies and were found to be more reliable in demonstrating the intentions of the parties with reference to transferring title. In those early days people relied on seals to make a written instrument genuine and authentic. Sealed instruments were so inviolate in early law that once a seal was attached to a writing it was held that not even fraud or forgery could be shown to avoid its effectiveness. The seal was conclusive of the intent of parties. Since people have become more literate, the seal has lost its immutability, but the execution of a writing as the expression of the intentions of parties is still of highest importance in the law. In Indiana we have eliminated the necessity of a seal on a written instrument to give it an elevated and an unusual position of credibility.

Acts 1881 (Spec. Sess.), Ch. 38, § 319, p. 240, being Burns' Ind. Stat. Anno. § 2-1601 (1946 Repl.) provides:

"There shall be no difference in evidence between sealed and unsealed writings; and every writing not sealed shall have the same force and effect that it would have if sealed. A writing under seal, except conveyances of real estate, or any interest therein, may, therefore, be changed, or altogether discharged, by a writing not under seal. An agreement in writing without a seal for the compromise or settlement of a debt is as obligatory as if a seal were affixed."

In the case before us under the statute, therefore, this letter prepared by attorneys for the purpose of effecting a valid gift has the same significance legally as if it were a sealed instrument. In other words, is a gift by deed or other instrument under seal of physical personal property valid in the State of Indiana? This letter and the instrument in question are in the present tense, purporting to divest the owner of title effective immediately. It is not a gift *causa mortis* or testamentary in character, to take effect in the future, although it has two witnesses, as in the case of a will. We can consider it only as an act in the present.

It is urged that the law requiring only an actual physical delivery is a safeguard against fraud or impulsive promises. We are unable to follow such reasoning, particularly where a party goes into a law office and after consultation with attorneys, prepares the instrument in question and in this case, in the presence of two witnesses. To us it appears the action taken in this case is one to prevent any question of fraud. On the other hand, the physical possession of property, which must be explained by oral testimony of witnesses after the death of an individual, opens the door to more possibilities than does the written instrument in the present case.

Some attempt has been made in the argument to distinguish transfers of title to personal property by bills of sale, gifts made of intangible personal property and trusts done by way of a written instrument, from the facts in the case before us.

We see no reason for making any distinction. If those engaged in business and commercial transactions have found written instruments sufficient to convey title without physical delivery of possession, we see no reason why persons desiring to make a gift should be deprived of the benefits of the same principle of law.

It is almost universally recognized in all jurisdictions under Anglo-American law that a person may give physical personal property by means of a written instrument expressing a present intent to make the transfer of title immediately. This may be done without delivery of the personal property if, at the time, the written instrument or deed of gift, as it is sometimes called, is delivered to the donee.

> "It is almost uniformly held that a gift *inter vivos* or *causa mortis* may be effected by writing without delivery, where the writing is a deed or instrument under seal." 24 Am. Jur., *Gifts*, § 33 (1939).

> "Where the gift is evidenced by a writing executed by the donor, delivery of the writing is a sufficient delivery to support the gift." 38 C.J.S., *Gifts*, § 22b (1943).

> "It is almost universally held that a gift by instrument in writing is good without a delivery of the property, where the instrument is a deed or is under seal." 63 A.L.R. 537, 540.

A later annotation in A. L. R. 2d states:

> "The later cases appear to support the rule that no delivery of a tangible chattel or security is necessary to a gift thereof where the gift is evidenced by a formally executed and delivered deed or other instrument under seal, and the same appears to be true where the written instrument relied upon, although not under seal, is a formally executed assignment or bill of sale of the property." 48 A.L.R. 2d 1405, 1407.

Indiana has recognized this rule:

In *Crawfordsville Tr. Co.* v. *Elston Bank & Tr. Co.* (1940), 216 Ind. 596, 625, 25 N. E. 2d 626, 637, it is stated:

". . . Actual physical delivery of the object of the gift is not required. The delivery may be either actual, constructive or symbolical. *Richards* v. *Wilson,* supra, recognized that such gift might be made *by a deed without delivery."* (Our italics)

We therefore conclude that the law in Indiana is such that gift or transfer of title to tangible as well as intangible personal property may be made by written instrument (or deed of gift) stating a present intent. This may be done without a physical delivery of the property at the time, if the written instrument is delivered.

Some contention has been made in this case that there was evidence that the decedent-donor continued to pay taxes on the personal property following the execution of the written instrument of gift, and there was other evidence that possession of the property remained in the decedent, which the appellee contends is inconsistent with an intent on the part of the donor to make the gift. With reference to such items of evidence, we must state that the admission or consideration of the same violates the well known principle of the parol evidence rule. Parole evidence or other evidence extrinsic to a written instrument is not admissible for the purpose of altering, modifying or changing its meaning, terms or conditions. If a written instrument appears to be complete on its face and executed, there is a conclusive presumption (a rule of substantive law) that it is the ultimate intention of the maker, and its terms or conditions may not be varied or changed by parol or extrinsic evidence coming *de hors* the instrument. Only fraud, mistake and like matters going to the validity of its execution may be considered if put in issue. *In Matter of Estate of Harvey, etc.* v. *Huffer* (1955), 125 Ind. App. 478, 126 N. E. 2d 784; 13 I.L.E., *Evidence* § 181 (1959).

This appeal is transferred from the Appellate Court to the Supreme Court.

The judgment of the trial court is reversed, with directions to enter judgment for appellant.

Myers, J., concurs.

Hunter, J., concurring: "Although I concurred in the Appellate Court opinion, upon a careful reconsideration I believe the law should be as stated in Judge Arterburn's opinion."

Mote, J., dissents with opinion.

Jackson, J., not participating.

### DISSENTING OPINION.

MOTE, J.—Without claiming unjust pride in the authorship of the opinion of the Second Division of the Appellate Court, 214 N. E. 2d 186, in which all members of the Division concurred, I must respectfully dissent to the transfer of this cause to this Court and to the reversal thereof.

While I believe that the Appellate Court's opinion clearly states the law in the case, perhaps it would not be amiss were I to make additional remarks concerning my understanding of the law of gifts, as it prevails in Indiana; also, to comment upon the theories contained in the majority opinion; and to clarify my views as well as comment upon the applicability of the authorities cited and relied upon by the majority. As I consider the facts in each and every authority in Indiana cited to uphold the conclusion reached by Chief Justice Arterburn, it is my view that there is no similarity in any of them to the facts in the case at bar; also, it is my view that if properly applied, the Indiana authorities cited by Judge Arterburn actually support the opinion and decision of the Appellate Court.

Some courts today recognize two exceptions to the irrevocable delivery theory in the case of gifts *inter vivos*, these being (1) constructive delivery, such as that evidenced by yielding the possession of the only key to a locked chest or (2) the symbol, by the delivery of an instrument passing absolute

title to the objects. At common law, there were but three methods of transferring title: the sale, which required consideration; the testament, which required a statutory instrument with an *animus testandi*; and a gift *inter vivos* or *causa mortis*, which required delivery absolute in the case of *inter vivos* or upon a condition subsequent in the case of *causa mortis*, both coupled with an *animus donandi*. From the record before us, however, comments upon part of which will have our subsequent attention herein, if there should be any possible question on the above referred to exceptions, two in number, the decision of the trial court, sustained by substantial evidence on the treatment of the letter indicates the validity of such finding and judgment, and in effect forecloses any consideration of either of the two exceptions above.

The majority opinion cites *Klingaman* v. *Burch* (1939), 216 Ind. 695, 25 N. E. 2d 996, to support the statement that "possession of the deed of gift, or a deed in the case of real estate raises a presumption of acceptance and delivery of the same."

In the case at bar, there was a writing or letter which would serve the function similar to a deed, but since acceptance and delivery are missing as a fact, the presumption cannot be enjoyed.

When the above quotation is considered in context, we do not find support for the contentions of the Appellant, nor can we conceive that such statement can adversely affect the law of gifts, as we understand it to prevail in our jurisdiction.

The majority opinion states: "The main contention of the estate (appellee) is that a gift of tangible personal property cannot be made by a written instrument or deed of gift; that delivery of the personal property, symbolically or totally, must take place regardless of any written instrument." I do not understand this to be the main contention of the Estate, Appellee herein. Contrariwise, it is my understanding that for the written instrument to be effective as a completed gift *inter*

*vivos,* acceptance and delivery must obtain. We do not condemn the written instrument as a means of expressing the intention of the alleged donor. Such intention may be expressed in many ways, by many forms of written instruments, or even by way of parol. Currently we have in mind such a letter as here involved, but to complete the gift *inter vivos,* delivery to and acceptance by the donee is necessary. The authorities in our jurisdiction hold that with the intention to make a gift *in praesenti,* evidence of intention first must be shown, either orally or by writing, and thereafter the donor must part with the possession, dominion and control over the corpus, tangibles and intangibles. Expressed intention does not alone serve to complete a gift. What we have to say in this respect does not concern real estate because our Statutes set forth the requirements for a valid deed.

The record herein discloses that there is no dispute concerning tangible personal property other than that which was in the possession and control, and under the dominion, of the testatrix when she died. This property was bequeathed by will of decedent to other than Appellant; it was inventoried in her estate; and such property was alleged to be owned by the testatrix after the letter of gift and before her death in a petition by Appellant for the appointment of a guardian for her.

The majority opinion discusses the advance of education and the coming into general use of writings to evidence the transfer of the ownership of property both real and personal. Several digests are cited and quoted which announce general theories of the law of gifts, but their applicability to any statements of facts appears, to me at least, to be distinguishable when considered in relation to the decisions and language of the courts of this jurisdiction on the subject of what is necessary to complete a gift, *inter vivos.* In support of the digest cited by the majority opinion, it is stated that "Indiana has recognized this rule," to-wit: "Possession of the deed of

gift, or a deed in the case of real estate raises a presumption of acceptance and delivery of the same." *Crawfordsville Tr.* v. *Elston Bank & Tr. Co.* (1940) 216 Ind. 596, 25 N. E. 2d 626, is cited with the following quote:

". . . Actual physical delivery of the object of the gift is not required. The delivery may be either actual, constructive or symbolical. *Richards* v. *Wilson,* supra, recognized that such gift might be made by a deed without delivery."

Neither the quotation nor the citation support the conclusion reached; as a matter of fact, considered in context they both support this dissent.

A careful examination of the case of *Richards* v. *Wilson* (1916) 185 Ind. 335, 112 N. E. 780, discloses that in considering a charitable gift there involved, this Court stated:

"A more liberal rule obtains as to gifts to charity, for trusts for charity are favored by equity, and are to be construed as valid when possible and are often upheld where private trusts fail. . . . Courts look with favor upon all such donations, and endeavor to carry them into effect, if it can be done consistently with the rules of law. If the words of a gift are ambiguous or contradictory, they are so construed as to support the charity if possible."

2 Perry on Trusts (6th ed.) § 709 is cited and the opinion continues:

"And the liberality of equity to carry into effect a charitable purpose once it is discovered is particularly applicable to delivery and acceptance, for, in the nature of things, the beneficiary unknown and unborn, cannot actually receive the proposed gift."

It will be noted from a careful examination of the facts in *Richards* v. *Wilson,* supra, that a large number of donors or contributors, some of them quite substantial, subscribed to a fund or trustees of a fund to establish an educational institution. There was a failure of the first institution established and some of the contributors sought the return of such part

of their contributions after a sale of assets acquired through the contributions. The contributors had parted with possession, dominion and control *to trustees* and the contributions were upheld as a completed gift. This authority does not support the majority opinion herein.

Returning to the case of *Crawfordsville Tr. Co.* v. *Elston Bank & Tr. Co.*, supra, and referring to the quote therefrom, above set out, for an understanding of this Court's then expressed view on the subject, it is necessary to read further in the opinion, thus to clarify the matter. This Court said:

> *"The reason for requiring delivery is that actual delivery takes the thing given out of the possession of the donor and, therefore, places it beyond the power of his revocation.* A written assignment, such as we have here, which makes a present gift of personal property *which is in the possession of a third person,* which assignment is delivered to the assignee and notice thereof given to the one in possession, makes a valid completed gift which the donor cannot revoke. Such a written assignment, therefore, takes the place of delivery. *Ross, Ex'r,* v. *Watkins,* 1923, 80 Ind. App. 487, 141 N. E. 477. A different case is presented where the owner makes an order on, or even delivers an assignment to his agent *who never completes the gift.* If an agent fails to take an essential step, it is the same as if the owner stopped short of completion and, of course, *makes the gift invalid."* (Emphasis supplied.)

We believe that it is confusing to consider gifts of chattels, tangible and intangible property in relation to the gift of realty. It may be trite to say that a duly executed deed to realty which never leaves the personal possession of the grantor is not effective in the transfer of title, either by gift or otherwise. If, however, the owner of an interest in real estate conveys by valid deed such interest to another and knowingly and wilfully parts with possession of such deed, placing the same in the hands of other than his own agent (even a stranger to the transaction) with instructions to deliver to the grantee, there is an unqualified delivery, and the transfer, as between the parties, is complete.

Such, we think, is the meaning and effect of *Klingaman* v. *Burch*, supra, cited in the majority opinion. This case had to do with the gift of real estate by valid deed with ample evidence to support the finding that there was delivery following execution of the instrument of conveyance to the grantee. In our opinion, the transaction therein is in no manner comparable to the transaction now before us. It appears that there is language in the opinion which would permit the conclusion that a beneficial gift to a donee implies assent or acceptance. With this conclusion we are not at odds; however, this in no way implies that willingness alone to accept a gift amounts to acceptance without delivery of possession of and the parting with dominion and control over the object of the gift. The latter two items are quite as necessary in the gift of realty, although the valid deed serves as a symbol for reasons which are apparent.

It might be possible, we think, that the necessary symbolism could be applied to the gift of personalty such as in the gift of a large volume of identical or nearly identical items such perhaps as a warehouse filled with fruit or steel in the manner of feudal seizin in handing by the grantor to the grantee an emblem of the soil. But, as the majority states, better ways of conveyance have been discovered through education, reading and writing and in the advancement of civilization.

We cannot subscribe to the view that a written instrument such as a deed to real estate, the form of execution of which is prescribed by statute, can and does serve to perform the same or even similar function with respect to gifts of personalty. This does not imply, however, that a written instrument, call it what you may, is not available and cannot be employed to express the will of a donor. The point is that the use of such a written instrument, except in the limited manner above suggested, coupled with proof of symbolic or emblematic investment of title and possession, can or will be sufficient to constitute a gift *in praesenti*. *Crawfordsville Tr. Co.* v.

*Elston Bank & Tr. Co.,* supra; *Ross, Ex'r.* v. *Watkins,* supra; and we think *Richards* v. *Wilson,* supra, also, when carefully considered, and especially wherein repetitiously and for emphasis it is said by this Court:

> "The reason for requiring delivery is that actual delivery takes the thing given out of the possession of the donor and, therefore, places it beyond the power of his revocation."

Again:

> "A written assignment (as in the case at bar) such as we have here, which makes a present gift of personal property which is in the possession of a third person, which assignment is delivered to the assignee and notice thereof given to the one in possession, makes a valid completed gift which the donor cannot revoke."

Again:

> "A different case is presented where the owner makes an order on, or even delivers an assignment to his agent who never completes the gift. If an agent fails to take an essential step, it is the same as if the owner stopped short of completion and, of course, makes the gift invalid."

Not only does the quoted language of this Court impress us as being amply sufficient to sustain our view, but when considered, as above stated, and in the light of the further and additional facts that the testatrix, the alleged donor, continued to the time of her death to retain possession of the objects of the alleged gift; that she bequeathed the same in her will; and that Appellant alleged in the petition for the appointment of a guardian for the alleged donor that she, the latter mentioned, was then the owner of the objects of the alleged gift, the result appears to be rather overwhelming. Thus it would seem that if there ever were an intent to complete a gift, the subsequent actions taken by said alleged donor *inter vivos* properly could be said to have amounted to revocation. And one of the potent and relevant reasons for the requirement for dispossession and for delivery is to assure that revocation can-

not take place. In the circumtances, any intent expressed or offer to make a gift of personalty may be revoked so long as the alleged donor has it within his power to revoke. Such right of revocation ends with yielding of possession and control, by delivery to the donee personally, or to one not an agent of the donor, with instructions to transfer.

It is my deep conviction that the majority opinion wholly departs from the law of gifts as established in our jurisdiction; that the said opinion and decision cannot be clothed even with the necessity of changing the stream of thought in the modernization of alleged outmoded laws. It is my further view that courts should guard with zeal the pronouncements of the law which have been wrought through the crucibles of time, application and need.

Without even a suggestion that there is other than the highest purpose on the part of Appellant, I must point out that the door will be open now for the perpetration, or near perpetration, of fraud in the matter of gifts *inter vivos.* I wish to disassociate myself entirely from the expressions which will be used as future guides.

In my opinion, transfer should have been denied.

NOTE.—Reported in 226 N. E. 2d 332.