**CHARTER ONE MORTGAGE CORPORATION, Appellant–Defendant,**

v.

**Kyle CONDRA, on behalf of himself and others similarly situated, Appellee–Plaintiff.**

No. 49A05–0501–CV–30.

Court of Appeals of Indiana.

May 12, 2006.

David C. Campbell, Karl L. Mulvaney, Bingham McHale LLP, Indianapolis, IN, David P. Sanders, Michael T. Brody, Pro Hac Vice, Jenner & Block LLP, Chicago, IL, Elizabeth G. Porter, Pro Hac Vice, Jenner & Block LLP, Washington, D.C., Attorneys for Appellant.

Irwin B. Levin, Richard E. Shevitz, Scott D. Gilchrist, Eric S. Pavlack, Cohen & Malad, LLP, Indianapolis, IN, Attorneys for Appellee.

Susan W. Brooks, United States Attorney, Shelese Woods, Assistant United States Attorney, Office of the United States Attorney, Southern District of Indiana, Indianapolis, IN, Yvette Rivera, Ernest C. Barrett, III, Pro Hac Vice, Office of the Comptroller of the Currency, Washington, D.C., Attorneys for Amicus Curiae Office of the Comptroller of the Currency.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Charter One Mortgage Corporation ("Charter One") appeals the trial court's denial of its motion to dismiss the class action complaint filed by Appellees–Plaintiffs Kyle Condra and "others similarly situated" (collectively referred to as "Condra").[1] We affirm.[2]

### Issue

Charter One raises one issue that we restate as whether the Indiana Supreme Court's original jurisdiction over the unauthorized practice of law, which derives from Article 7, Section 4 of the Indiana Constitution, is preempted by a regulation promulgated under the National Bank Act that permits national banks to charge incidental fees for legal services provided by non-lawyers in the preparation of real estate loan documents.

---

1. The trial court stayed certification of the class action pending resolution of Charter One's motion to dismiss. Nevertheless, because it was filed as such, we will refer to the complaint as a class action complaint.

2. We heard oral argument in this case on March 2, 2006, at Indiana University School of Law in Bloomington, Indiana. We thank counsel and amicus curiae for their advocacy and extend our appreciation to the School of Law for hosting the oral argument.

### Facts and Procedural History

The relevant facts are undisputed. On October 24, 2002, Condra borrowed $89,600.00 from Charter One for the purchase of certain real estate located at 12160 Pebblebrook Court. This loan was secured by a mortgage on the property. In connection with the loan, Charter One charged Condra a document preparation fee in the amount of $175.00, for preparation of the deed and mortgage. Charter One's agents or employees, none of whom is licensed to practice law, prepared these legal documents.

On November 21, 2003, Condra filed a class action complaint against Charter One, alleging that the document preparation fee violated Indiana law and constituted unjust enrichment. On February 20, 2004, Charter One filed a motion to dismiss the complaint for failing to state a claim upon which relief can be granted, pursuant to Indiana Trial Rule 12(B)(6). In particular, Charter One contended that, because it is an operating subsidiary of a national bank, i.e., Charter One Bank, N.A., it is subject to the federal regulations promulgated by the Office of the Comptroller of the Currency ("OCC").[3] Those regulations, according to Charter One, not only allow national banks and their operating subsidiaries to charge certain non-interest related fees—such as the document preparation fee in question—but also expressly preempt Indiana state law

---

3. In its motion to dismiss, Charter One requested that the trial court take judicial notice of the fact that it is a subsidiary of a national bank. *See* Ind. Evid. R. 201. Without deciding whether judicial notice was proper, we note that, at oral argument, Condra conceded that Charter One is an operating subsidiary of a national bank and, further, that the only issue presented is whether the trial court properly denied Charter One's motion to dismiss on the issue of preemption. Accordingly, we limit our discussion to that issue.

to the contrary. On October 16, 2004, after conducting a hearing on Charter One's motion to dismiss with respect to the issue of preemption, the trial court denied the motion in favor of Condra. *Id.* at 7. Thereafter, and upon petition by Charter One, the trial court certified its judgment for interlocutory appeal and we accepted jurisdiction on March 12, 2005.

**Discussion and Decision**

*I. Standard of Review*

■■■ On appeal, Charter One argues that the trial court erroneously denied its motion to dismiss the Complaint under Indiana Trial Rule 12(B)(6).[4] The standard of review of a trial court's grant or denial of a motion to dismiss for failure to state a claim is de novo. *Sims v. Beamer,* 757 N.E.2d 1021, 1024 (Ind.Ct.App.2001). We do not defer at all to the trial court's decision because deciding a motion to dismiss based upon failure to state a claim involves a pure question of law. *Id.* That is, it does not require reference to extrinsic evidence, the drawing of inferences therefrom, nor the weighing of credibility for its disposition. *Bader v. Johnson,* 732 N.E.2d 1212, 1216 (Ind.2000). The grant or denial of a motion to dismiss turns solely on the legal sufficiency of the claim and does not require determinations of fact. *Sims,* 757 N.E.2d at 1024.

■■■ Because an Indiana Trial Rule 12(B)(6) motion to dismiss tests the legal sufficiency of a claim, and not the facts

supporting it, a complaint may not be dismissed on the basis that it fails to state a claim upon which relief may be granted unless it appears to a certainty, on the face of such complaint, that the complaining party is not entitled to any relief. *McQueen v. Fayette County Sch. Corp.,* 711 N.E.2d 62, 65 (Ind.Ct.App.1999), *trans. denied.* In ruling upon a motion to dismiss for failure to state a claim, the trial court is required to view the complaint in a light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor. *Id.* The trial court may only look to the complaint, and well-pleaded material must be taken as admitted. *Id.; see also Crosson v. Berry,* 829 N.E.2d 184, 189 (Ind.Ct.App.2005), *trans. denied.*

*II. Analysis*

On appeal, Charter One argues that the trial court erroneously denied its motion to dismiss because Indiana law, which prohibits non-attorneys from engaging in the unauthorized practice of law by charging document preparation fees for legal instruments prepared by non-attorneys, has been preempted by the National Bank Act. In response, Condra contends that the trial court's judgment was proper inasmuch as there is no direct conflict between Indiana law and the federal regulation in question. Before we address the preemption issue, we first examine the allegedly

---

4. Indiana Trial Rule 12(B)(6) provides:
 Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required; except that at the option of the pleader, the following defenses may be made by motion:
 
 * * * * * *
 
 (6) Failure to state a claim upon which relief can be granted, which shall include

failure to name the real party in interest under Rule 17....

competing state and federal laws or regulations.

### A. Relevant Indiana Law

 Indiana, like most other states, requires minimum levels of education, training, and character before granting a license to practice law. *See, e.g.,* Ind. Admission and Discipline Rules 12 (character and fitness), 13 (educational requirements), 17 (bar examinations), and 22 (attorney oath). The purpose of these minimum standards is to protect the public from potential injury resulting from laypersons performing acts that require the training, knowledge, and responsibility of a licensed attorney. *See King v. First Capital Fin. Serv. Corp.,* 215 Ill.2d 1, 293 Ill.Dec. 657, 828 N.E.2d 1155, 1162 (2005). The power to regulate the conduct of licensed attorneys and to define the practice of law is a prerogative of the Indiana Supreme Court under the Indiana Constitution.[5] *See* IND. CONST. art. 7, § 4; Ind.Code § 33–24–1–2(b)(2); *see also In re Mittower,* 693 N.E.2d 555, 558 (Ind.1998).

In *Miller v. Vance,* 463 N.E.2d 250, 251 (Ind.1984), the Indiana Supreme Court considered whether the preparation of a mortgage instrument by a bank employee who was not a licensed attorney constituted the unauthorized practice of law. There, the Court observed that the "core element of practicing law is the giving of legal advice to a client and the placing of oneself in the very sensitive relationship wherein the confidence of the client, and the management of his affairs, is left totally in the hands of the attorney." *Id.* The Court also recognized that the "undertaking to minister to the legal problems of another creates an attorney-client relationship without regard to whether the services are actually performed by the one so undertaking the responsibility or are delegated or subcontracted to another." *Id.*

That said, the *Miller* Court noted that the filling in of blanks in legal instruments, which requires only the use of common knowledge regarding the information to be inserted, is not generally considered to be the practice of law unless it involves "considerations of significant legal refinement, or the legal consequences of the act are of great significance to the parties involved." *Id.; see also Lawson v. First Union Mortg. Co.,* 786 N.E.2d 279, 282 (Ind.Ct. App.2003). However, the *Miller* Court cautioned:

> We emphasize that there are certain limitations which apply to bank employees similar to those placed upon real estate brokers. A lay bank employee may fill in the blanks on a standardized mortgage form which has been approved by an attorney in a transaction which involves the employer bank and the bank's client. The lay bank employee may not give advice or opinions as to the legal effects of the instruments he prepares or the legal rights of the parties. *The bank may not make any separate charge for the preparation of the mortgage instrument.*

*Miller,* 463 N.E.2d at 253 (emphasis added).

 As a result of *Miller,* in Indiana, bank employees who are not licensed at-

---

5. It is important to note that we have jurisdiction to hear the controversy before us because it does not involve a determination of what constitutes the unauthorized practice of law. *See, e.g., State v. Diaz,* 838 N.E.2d 433, 435 (Ind.2005) (recognizing that the Indiana Supreme Court has "original and exclusive jurisdiction over matters involving the unautho- rized practice of law") (citing IND. CONST. art. 7, § 4 *and* Ind.Code § 33–24–1–2(b)(2)). Rather, the present action concerns whether a banking action that the Indiana Supreme Court has already determined constitutes the unauthorized practice of law, if performed by non-attorneys, is in conflict with the National Bank Act.

torneys may prepare mortgage instruments without committing the unauthorized practice of law, provided that: (1) they do not give advice or opinions as to the legal effects of the instruments prepared or the legal rights of the parties; and (2) the bank does not make a separate charge for the preparation of the mortgage instrument. *Id.; see also State v. Diaz,* 838 N.E.2d 433, 435 (Ind.2005). It is this latter condition that is implicated here.

### B. The National Bank Act

National banks are created and governed by the National Bank Act, 12 U.S.C. §§ 21 *et seq.,* which was originally enacted in 1864. In brief, the National Bank Act authorizes national banks to engage in various banking activities and "to exercise ... all such incidental powers as shall be necessary to carry on the business of banking...." 12 U.S.C. § 24 (Seventh). In addition, Congress has expressly authorized national banks to engage in residential lending subject to restrictions and requirements prescribed by the OCC. *See* 12 U.S.C. § 371(a).[6]

▇▇▇ National banks are instrumentalities of the federal government, created for a public purpose, and, as such, necessarily subject to the paramount authority of the United States. *Davis v. Elmira Sav. Bank,* 161 U.S. 275, 283, 16 S.Ct. 502, 40 L.Ed. 700 (1896). They remain subject to state laws, but only insofar as those laws do not "prevent or significantly interfere with the national bank's exercise of its powers." *Barnett Bank of Marion County v. Nelson,* 517 U.S. 25, 33, 116 S.Ct.

1103, 134 L.Ed.2d 237 (1996). Moreover, to prevent inconsistent or intrusive state regulation from impairing the national system, the National Bank Act specifically limits states' ability to exercise supervisory authority over national banks. *See* 12 U.S.C. § 484(a); *see also Wachovia Bank, N.A. v. Burke,* 414 F.3d 305, 311–12 (2d Cir.2005), *petition for cert. filed* (Sept. 30, 2005). Specifically, 12 U.S.C. § 484(a) provides:

> No national bank shall be subject to any visitorial powers except as authorized by Federal law, vested in the courts of justice or such as shall be, or have been exercised or directed by Congress....

▇▇▇ The OCC is the federal agency entrusted with the "primary responsibility for surveillance of 'the business of banking' authorized by [12 U.S.C.] § 24 Seventh." *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.,* 513 U.S. 251, 256, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995). One of the regulations promulgated by the OCC is 12 C.F.R. § 5.34(e)(3), which permits national banks to conduct their banking business through operating subsidiaries and provides that those subsidiaries are subject to the same regulations as the parent national bank. As a consequence, state laws apply to national bank operating subsidiaries, such as Charter One, to the same extent that those laws apply to the parent national bank. *See* 12 C.F.R. § 7.4006.

Another regulation, 12 C.F.R. § 7.4002, allows national banks—and their operating subsidiaries—to charge their customers "non-interest charges and fees"[7] as follows:

---

**6.** 12 U.S.C. § 371(a) provides, in part:

(a) Authorization to make real estate loans; orders, rules, and regulations of Comptroller of the Currency[:]
Any national banking association may make, arrange, purchase or sell loans or extensions of credit secured by liens on

interests in real estate, subject to section 1828(*o*) of this title and such restrictions and requirements as the Comptroller of the Currency may prescribe by regulation or order.

**7.** 12 C.F.R. § 7.4001 provides that the term "interest" includes:

(b) Considerations.

(1) All charges and fees should be arrived at by each bank on a competitive basis and not on the basis of any agreement, arrangement, undertaking, understanding, or discussion with other banks or their officers.

(2) The establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles. A national bank establishes non-interest charges and fees in accordance with safe and sound banking principles if the bank employs a decision-making process through which it considers the following factors, among others:

(i) The cost incurred by the bank in providing the service;

(ii) The deterrence of misuse by customers of banking services;

(iii) The enhancement of the competitive position of the bank in accordance with the bank's business plan and marketing strategy; and

(iv) The maintenance of the safety and soundness of the institution.

*Id.* Thus, pursuant to 12 C.F.R. § 7.4002, national banks may assess such non-interest charges and fees as the bank determines is appropriate in accordance with "safe and sound" banking principles, which may include consideration of the cost incurred to the bank in providing a particular service. *Id.*

Here, because document preparation fees do not constitute "interest" under 12 C.F.R. § 7.4001, the broad grant of authority in § 7.4002 would permit a national bank to charge a competitive document preparation fee, provided that such fee represents a safe and sound banking principle. Moreover, and with respect to the applicability of state law, 12 C.F.R. § 7.4002(d) provides: "The OCC applies preemption principles derived from the United States Constitution, as interpreted through judicial precedent, when determining whether State laws apply that *purport to limit or prohibit charges and fees* described in this section." (Emphasis added).

## C. Federal Preemption

The present action involves the intersection between the broad authority given to national banks to assess non-interest charges and fees, under the National Bank Act and 12 C.F.R. § 7.4002, and Indiana's right to prohibit non-attorneys from engaging in the unauthorized practice of law by preparing—and charging a separate fee for the preparation of—certain legal documents. Charter One maintains that, because the Indiana law in question effectively limits or prohibits certain national banks

any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, late fees, creditor-imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds, overlimit fees, annual fees, cash advance fees, and membership fees. It does not ordinarily include appraisal fees, premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit, finders' fees, *fees for document preparation* or notarization, or fees incurred to obtain credit reports.

(Emphasis added).

from charging document preparation fees, it is preempted by 12 C.F.R. § 7.4002.[8] This particular preemption issue is one of first impression in Indiana. What is more, of the two jurisdictions that have confronted similar issues to the one at bar, neither has reached the issue of preemption. *See, e.g., King v. First Capital Fin. Serv. Corp.,* 215 Ill.2d 1, 293 Ill.Dec. 657, 828 N.E.2d 1155 (2005); *and Fuchs v. Wachovia Mortgage Corp.,* No. 17000–03, 2005 WL 3076343 (N.Y.Sup. Nov. 15, 2005).[9]

 The preemption doctrine is based upon the Supremacy Clause of the United States Constitution, which provides, in pertinent part, that the law of the United States "shall be the supreme law of the land … anything in the constitution or laws of any state to the contrary notwithstanding." U.S. CONST. art. VI, § 2. Any state or local law that conflicts with federal law is "without effect." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Three variations of federal preemption exist: (1) express preemption, which occurs when a statute expressly defines the scope of its preemptive effect; (2) field preemption, which occurs when a pervasive scheme of federal regulation makes it reasonable to infer that Congress intended exclusive federal regulation of the area; and (3) conflict preemption, which occurs either where it is impossible to comply with both federal and state or local law or where state law stands as an obstacle to the accomplish-

ment and execution of federal purposes and objectives. *See In re Guardianship of Wade,* 711 N.E.2d 851, 853 (Ind.Ct.App. 1999) (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 386–87, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); *and Gade v. Nat'l Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992)).

 The crucial question in any preemption analysis is always whether Congress intended that federal regulation supersede state law. *See Gorka v. Sullivan,* 671 N.E.2d 122, 125 (Ind.Ct.App. 1996), *trans. denied.* Accordingly, an understanding of the scope of a preemption statute relies upon an understanding of congressional purpose, as discerned from the language of the preemption statute and the statutory framework surrounding it. *Rogers ex rel. Rogers v. Cosco, Inc.,* 737 N.E.2d 1158, 1163 (Ind.Ct.App.2000), *reh'g denied, trans. denied.* Also relevant to the analysis is the "structure and purpose of the statute as a whole, as revealed not only in the text, but also through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Id.* (quoting *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 486, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)).

 Administrative regulations promulgated pursuant to congressional au-

---

**8.** In its brief, Charter One also refers to 12 C.F.R. § 7.4009(b), which provides, in relevant part: "Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its powers to conduct activities authorized under Federal law do not apply to national banks." However, § 7.4009, on its face, only applies to "any national bank power or aspect of a national bank's operations that is *not covered* by another OCC regulation specifically addressing the applicability of

state law." 12 C.F.R. § 7.4009(c) (emphasis added). Because 12 C.F.R. § 7.4002(d) specifically applies to a national bank's power to assess non-interest charges and fees, § 7.4009 is inapplicable to the present action.

**9.** In its amicus brief, the OCC also cites to an opinion issued by the Muskegon County Circuit Court for the State of Michigan, i.e., *Brannam v. Huntington Mortgage Co.,* No. 00–40439–CH (Feb. 2, 2004).

thorization have the same preemptive effect as federal statutes. *Id.; see also Fidelity Fed. Savings & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) (noting that "[f]ederal regulations have no less pre-emptive effect than federal statutes"). Courts do not lightly attribute to Congress or to a federal agency the intent to preempt state or local laws. *Rogers ex rel. Rogers,* 737 N.E.2d at 1163. The historic police powers of the states are not to be superseded by federal law unless that was the clear and manifest purpose of Congress. *Id.*

■ At oral argument, the parties agreed that the present controversy involves conflict preemption. What is more, because 12 C.F.R. § 7.4002 permits, rather than mandates, national banks to charge certain non-interest charges and fees, it is certainly not impossible to comply with both the federal regulation and the Indiana law at issue. Therefore, pursuant to the doctrine of conflict preemption, we must determine whether the Indiana law stands as an obstacle to the accomplishment and execution of the purposes and objectives of 12 C.F.R. § 7.4002.

As previously mentioned, 12 C.F.R. § 7.4002 allows national banks to charge non-interest charges and fees, including document preparation fees, provided that such fees represent a safe and sound banking principle. Moreover, pursuant to 12 C.F.R. § 7.4002(d), the OCC applies general preemption principles derived from the United States Constitution—as interpreted through judicial precedent—when determining the application to national banks of any state law that purports to limit or prohibit non-interest charges and fees. One such non-interest fee would be the document preparation fee in dispute. *See* 12 C.F.R. § 7.4001. However, the Indiana law at issue does not, in any way, limit or prohibit the non-interest charges and fees a national bank may assess in connection with its banking activities. Nor does it stand as an obstacle to the accomplishment and execution of the purposes and objectives of the federal regulation in dispute, i.e., 12 C.F.R. § 7.4002. Rather, it merely identifies *who*—i.e., a licensed attorney or a non-attorney—may perform the document preparation when such separate fees are charged. Put another way, if a national bank or its subsidiary, such as Charter One, wishes to charge a separate fee for the preparation of legal documents—and determines that such fee is a safe and sound banking practice [10]—it may do so in Indiana, provided that it employs licensed attorneys to prepare the documentation. Otherwise, the national bank is engaged in the unauthorized practice of law. We would not give a medical technician a scalpel and permit him or her to perform brain surgery, nor would we allow a general bookkeeper to act as a certified public accountant. In like fashion, Indiana does not allow laypersons to charge fees for preparing legal instruments, which is a quintessential act of practicing law.

Because Indiana does not limit or prohibit national banks from charging non-interest fees, or serve as an obstacle to the accomplishment and execution of the purposes and objectives of 12 C.F.R. § 7.4002 and, further, because it does not prevent or significantly interfere with the national bank's exercise of its banking powers, it is not preempted by the federal regulation at issue. Accordingly, Condra's complaint states a claim upon which relief can be

---

**10.** While not before us, we question whether it is a safe and sound banking practice to employ non-lawyers to prepare legal documents, inasmuch as such individuals are un-trained in the legal effect of the language they choose to include or exclude from the documents they prepare.

granted and the trial court properly denied Charter One's motion to dismiss.

 Moreover, our conclusion is supported by 12 C.F.R. §§ 34.3 and 34.4. In particular, as part of its charge to regulate the real estate lending activities of national banks under 12 U.S.C. § 371(a), the OCC has promulgated 12 C.F.R. § 34.3. That regulation provides, in relevant part:

(a) A national bank may make, arrange, purchase, or sell loans or extensions of credit, or interests therein, that are secured by liens on, or interests in, real estate (real estate loans), subject to 12 U.S.C. 1828(*o*) and such restrictions and requirements as the Comptroller of the Currency may prescribe by regulation or order.

Concerning the applicability of state law, 12 C.F.R. § 34.4 provides:

(a) Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks. Specifically, a national bank may make real estate loans under 12 U.S.C. 371 and § 34.3, without regard to state law limitations concerning:

(1) Licensing, registration (except for purposes of service of process), filings, or reports by creditors;

(2) The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements or risk mitigants, in furtherance of safe and sound banking practices;

(3) Loan-to-value ratios;

(4) The terms of credit, including schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

(5) The aggregate amount of funds that may be loaned upon the security of real estate;

(6) Escrow accounts, impound accounts, and similar accounts;

(7) Security property, including leaseholds;

(8) Access to, and use of, credit reports;

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents;

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

(11) Disbursements and repayments;

(12) Rates of interest on loans;[11]

(13) Due-on-sale clauses except to the extent provided in 12 U.S.C. 1701j–3 and 12 CFR part 591; and

(14) Covenants and restrictions that must be contained in a lease to qualify the leasehold as accept-

---

11. The limitations on charges that comprise rates of interest on loans by national banks are determined under Federal law. *See* 12 U.S.C. 85 and 1735f–7a; 12 CFR 7.4001. State laws purporting to regulate national bank fees and charges that do not constitute interest are addressed in 12 CFR 7.4002.

able security for a real estate loan.

(b) *State laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers:*

 (1) Contracts;

 (2) Torts;

 (3) Criminal law; . . .

 (4) Homestead laws specified in 12 U.S.C. 1462a(f);

 (5) Rights to collect debts;

 (6) *Acquisition and transfer of real property;*

 (7) Taxation;

 (8) Zoning; and

 (9) Any other law the effect of which the OCC determines to be incidental to the real estate lending operations of national banks or otherwise consistent with the powers and purposes set out in § 34.3(a).

(Footnote in original and emphasis added). Pursuant to these regulations, Indiana has the right to regulate the acquisition and transfer of real property, so long as such regulations only incidentally affect the exercise of national banks' real estate lending powers.

■ Historically, in the days when few people could write, formal ceremonies and physical acts in the presence of witnesses were given legal significance. *Lewis v. Burke,* 248 Ind. 297, 302, 226 N.E.2d 332, 335 (1967). In the case of real estate, for example, livery of seisin was necessary to transfer ownership of real estate. *Id.* As people became more literate and writing became more common, however, deeds and written instruments replaced these physical ceremonies. Now, in lieu of "livery of seisin," legal instruments such as deeds and mortgages are the means by which interests in real property are acquired and transferred. *See, e.g., Ames v. Ames,* 46 Ind.App. 597, 91 N.E. 509, 512 (1910) (recognizing that the delivery of a deed is in lieu of "livery of seisin," without which title to real estate cannot be conveyed and, further, that notes are property in the sense that they can be transferred by delivery and thus transfer the claim for the debts which they represent). In that vein, 12 C.F.R. § 34.4 permits Indiana to regulate a national bank's preparation of these legal instruments, provided that the regulations only incidentally impinge upon the bank's real estate lending powers.[12]

Therefore, requiring national banks either to have attorneys prepare the legal instruments involved in a real estate transaction *or* forego the document preparation fee only incidentally affects the bank's exercise of its powers under the National Bank Act. Indeed, the $175.00 document preparation fee at issue is insignificant in light of the large sums of money being transferred in a typical real estate lending transaction or the amount paid out in interest over the life of a loan.

■ For the foregoing reasons, we conclude that the Indiana Supreme Court's jurisdiction and authority to define and prohibit the unauthorized practice of law

---

12. Moreover, national banks, as well as others, rely upon the states' apparatuses for recording these various interests, which allow for the unrestrictive alienation of real estate throughout the United States. Additionally, if one considers the problems created by an inartfully drafted document—especially from the perspective of an abstractor or title insurance company—it is clear that the state laws pertaining to the preparation of documents that encumber or transfer real estate were not intended by Congress to be preempted by federal regulation.

by preventing banks from charging document preparation fees for legal instruments prepared by non-attorneys is not preempted by the National Bank Act or 12 C.F.R. § 7.4002.[13] Accordingly, we affirm the trial court's denial of Charter One's motion to dismiss Condra's complaint.

Affirmed.

BAKER, J., and NAJAM, J., concur.

---

**13.** Although outside the scope of traditional preemption analysis, our conclusion is bolstered by recognition that the state law in question is not derived from a legislative enactment but from the text of the Indiana Constitution which vests jurisdiction over the practice of law in our Supreme Court. We acknowledge that the Supremacy Clause makes no distinction between "the Constitution or Laws of any State" and that the doctrine of preemption applies regardless of the source of the state law at issue. But we think that when, as here, there is a textually demonstrable commitment of authority to a distinct branch of state government, Congressional intent should be clear before the Supremacy Clause is invoked to supercede that authority, albeit that of a state supreme court.