T.C. Memo. 2013-8

UNITED STATES TAX COURT

ESTATE OF SHELDON C. SOMMERS, DECEASED, BERNICE LANG
SOMMERS, EXECUTRIX, Petitioner, AND WENDY SOMMERS, JULIE
SOMMERS NEUMAN, AND MARY LEE SOMMERS-GOSZ, Intervenors <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 9305-07, 9306-07.            Filed January 10, 2013.

Both P and R have moved for partial summary judgment on the
issue of whether D (1) made gifts to his nieces (intervenors herein), in
2001 and 2002, of all the units of an LLC holding works of art
contributed to the LLC by D, as R and intervenors argue, or (2)
retained and, within three years of his death, relinquished the power to
"alter, amend, revoke, or terminate" those gifts, within the meaning of
I.R.C. sec. 2038(a)(1), so that the LLC units are includable in D's gross
estate pursuant to I.R.C. sec. 2035(a), as P argues (date-of-gift issue).
D and the nieces had agreed that his gifts of LLC units to them were to
be tax free to him, and they were made over a two-year period to
assure that result. The share amounts were left blank in the executed
gift documents pending receipt of an appraisal. Upon receipt of the
appraisal, the share amounts were filled in and, because the
appraisal was higher than anticipated, the 2002 gift document was
revised to reflect the nieces' agreement to pay the resulting 2002 gift

[*2] tax, thereby carrying out D and the nieces' agreement that D's gifts be tax free to him.  P argues that the blanks in the executed gift documents necessarily gave D the power to "alter, amend, revoke, or terminate" the gifts within the meaning of I.R.C. sec. 2038(a)(1), a power which he later relinquished by acquiescing in his attorneys' distribution of the completed gift documents to the nieces.  P further argues that, because D died within three years of his relinquishing that power, the LLC units are includable in D's gross estate pursuant to I.R.C. sec. 2035(a), and the gifts are not subject to Federal gift tax.  R argues that, because courts in both Indiana and New Jersey determined that the 2001 and 2002 gift documents effected valid, irrevocable gifts of the LLC units to the nieces, P is collaterally estopped from arguing to the contrary.

P also asks us to rule that (1) the estate tax determined in the notice of deficiency must be redetermined to reflect the inclusion of the LLC units in D's gross estate and (2) all estate taxes must be apportioned to the nieces pursuant to New Jersey's estate tax apportionment statute.

1.  Held:  R's motion for partial summary judgment with respect to the date-of-gift issue will be granted on the basis of collateral estoppel and, alternatively, because the 2001 and 2002 gifts were, in fact, gifts for Federal gift tax purposes.  P's motion with respect to that issue will be denied.

2.  Held, further, P's motion for a ruling that we must redetermine R's estate tax deficiency is premature, and, therefore, will be denied.

3.  Held, further, P's motion that we agree, in principle, to apportion all estate taxes to the nieces pursuant to New Jersey's estate tax apportionment statute is premature and, therefore, will be denied.

[*3] <u>Matthew E. Moloshok</u> and <u>David N. Narciso</u>, for petitioner.

<u>Michael A. Guariglia</u>, for intervenors.

<u>Lydia A. Branche</u> and <u>Robert W. Mopsick</u>, for respondent.


MEMORANDUM OPINION


HALPERN, <u>Judge</u>: Both petitioner and respondent have moved for partial summary judgment (together, motions). Each party objects to the other's motion. The issue common to the motions is whether decedent, Sheldon C. Sommers (decedent or Dr. Sommers), made completed gifts for Federal gift tax purposes to his nieces, Wendy Sommers, Julie Sommers Neuman, and Mary Lee Sommers-Gosz, intervenors herein (nieces or intervenors), on December 27, 2001, and January 4, 2002, of interests in Sommers Art Investors, LLC (LLC), as both respondent and intervenors argue, or whether decedent retained the power to alter, amend, revoke, or terminate those transfers until he allegedly relinquished that power on April 11, 2002, within seven months of his death on November 1, 2002, with the result that (1) the earlier transfers were not taxable gifts and (2) the transferred LLC interests (LLC units) are includable in decedent's gross estate

**[*4]** pursuant to sections 2035 and 2038,[1] as petitioner argues. Petitioner's motion also asks us to rule that (1) the estate tax determined in the notice of deficiency that petitioner challenges in docket No. 9305-07 should be redetermined in the light of the greater amount (as alleged by petitioner) includable in decedent's gross estate and (2) pursuant to the New Jersey estate tax apportionment statute, all estate taxes should be apportioned to the nieces as transferees of the LLC units, which petitioner alleges are includable in decedent's gross estate, with the result that the estate's marital deduction is not reduced by those taxes.

These consolidated cases arose as a result of two notices of deficiency issued to petitioner in January 2007. One notice determined gift tax deficiencies of $245,733 and $209,723 for 2001 and 2002, respectively. The other determined an estate tax deficiency of $542,598. The gift tax deficiencies (challenged by petitioner in docket No. 9305-07) are premised on respondent's position that, in reporting as taxable gifts decedent's December 27, 2001, and January 4, 2002, transfers of LLC units to the nieces (2001 and 2002 transfers), a position which petitioner now rejects as improper, petitioner undervalued those units for Federal gift tax purposes. The estate tax deficiency (challenged by petitioner in docket

---

[1]Unless otherwise noted, all section references are to the Internal Revenue Code (Code) in effect at relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*5]** No. 9306-07) is attributable to the increase in decedent's gross estate resulting from respondent's inclusion therein, pursuant to section 2035(b), of the gift tax respondent alleges is due with respect to the 2001 and 2002 transfers, the upward revaluation of the LLC units allegedly given to the nieces in 2001 and 2002, and a reduction in the marital deduction available to the estate under section 2056.[2]

If we are able to dispose of all of the issues that the parties have raised in the motions, the issues left for trial will be the proper valuation of the works of art that decedent transferred to the LLC (and, by extension, of the LLC units themselves) and the amount of gift tax to be included in decedent's gross estate under section 2035(b).[3]

---

[2]Under the integrated or unified estate and gift tax regime enacted in 1976, a tentative tax is computed on the sum of the taxable estate (determined with respect to a gross estate that includes gift tax paid on any gift by a decedent or his or her spouse during the three-year period before the decedent's death) plus adjusted taxable gifts. That amount is then reduced by the gift tax payable on post-1976 gifts at the rates in effect on the date of the decedent's death. That amount is further reduced by the unified credit against estate tax and by other available credits. The resulting amount is the net estate tax due. See secs. 2001(b), 2010-2016, 2035(b). In these cases, the LLC units are subject to the estate tax either as part of decedent's taxable estate or as part of decedent's adjusted taxable gifts.

[3]Should we decide, in favor of respondent and intervenors, that decedent made taxable gifts to the latter in 2001 and 2002, another potential issue for trial is whether we must, as petitioner argues, limit the 2001 gift to the maximum amount that can pass to the nieces free of Federal gift tax in that year with the balance of the LLC units deemed to have been given in 2002.

[*6]                                   Background

I.      Introduction

Although the motions are not based on stipulated facts, it is clear that (1) both

parties consider partial summary judgment appropriate and (2) neither has lodged

specific objections to the other's statement of facts.  Therefore, they are in

agreement that there are no genuine issues as to any material facts.  See Rule

121(b).[4]  Indeed, the parties' respective statements of the material facts are

essentially identical.[5]

---

[4]In his response to petitioner's motion, respondent alleges that the question of whether decedent made taxable gifts of his LLC units on December 27, 2001, and January 4, 2002, or retained the power to alter, amend, revoke, or terminate those transfers until that power was released on April 11, 2002, constitutes a material (unagreed) factual issue.  But respondent's motion is premised on the view that, as a matter of law, decedent made taxable gifts on December 27, 2001, and January 4, 2002.  We agree that the material facts herein are not in dispute and that the characterization, for Federal estate and gift tax purposes, of the December 27, 2001, and January 4, 2002, transfers is a question of law.

[5]We derive the material facts from the motions and from the decision of the Superior Court of New Jersey in In re Estate of Sommers, No. BER-P-175-07 (N.J. Super. Ct. Ch. Div. Feb. 4, 2009), which both parties discuss in the motions.

**[*7]** II.     <u>Development of the Plan for Transferring Decedent's Artwork to the Nieces</u>

Decedent, a successful physician, owned a valuable collection of original art by world-famous artists, including Bernard Buffet, Charles Burchfield, Alexander Calder, Salvador Dali, Edward Hopper, and Joan Miro.

Decedent's wife of 45 years died in 1989, and he remarried in 1990. He divorced his second wife, Bernice Sommers (Bernice) in 1997, but they remarried on June 23, 2002, and were still married at the time of decedent's death on November 1, 2002. No child was born of either marriage.

During his lifetime, decedent lived in both Indiana and New Jersey. At the time he divorced Bernice he was a resident of New Jersey. He moved back to Indiana in 1998 but returned to New Jersey in 2002 and was a New Jersey resident when he died. The nieces were the daughters of his only sibling, a brother, Richard, who lived in Indiana. Richard died in 2000 leaving the nieces as decedent's closest living relatives.

In 2001, while residing in Indiana, decedent hired Kristin Fruehwald, an attorney with Barnes & Thornburg (B&T), an Indiana law firm that specialized in estate planning, to advise him on the transfer of 12 of his works of art to the nieces. Shortly before his conversation with Ms. Fruehwald, decedent had

[*8] arranged for the 12 pieces to be moved from New Jersey to the nieces' respective homes in Indiana and Illinois, where they have remained ever since.

Ms. Fruehwald and decedent agreed that she would develop a plan whereby he could make the gifts of artwork to the nieces without incurring gift tax on the transactions.  Decedent told the nieces of his plans, and, at his request, they discussed the proposed gifts with Ms. Fruehwald, who told them to secure an appraisal of the 12 works of art.  Ms. Fruehwald and the nieces also discussed having the nieces commit to pay any gift tax that might become due should the gifts exceed the then-applicable section 2010(c)(3) "basic exclusion amount" of $675,000.  The nieces had the art appraised by Sharon Theobold, who issued an appraisal report dated September 10, 2001, reflecting her opinion that the art had a combined value of $1,750,000, which was much higher than Ms. Fruehwald had anticipated.

Having in mind decedent's goals of maintaining family control over, and preventing sales of, the 12 works of art and of avoiding gift tax on their transfer to the nieces, Ms. Fruehwald and Randal Kaltenmark, a B&T tax attorney, recommended the following giving plan to decedent.  Decedent and the nieces would form a limited liability company to own the art.  There would be an operating agreement that would include restrictions on member transfers of capital

**[\*9]** interests. Decedent then would make gifts to the nieces, over a period of time, of his interests in it. The attorneys explained to decedent that, if the artwork was owned by a limited liability company, subsequent gifts of minority interests in it would have a lower value than gifts of the artwork itself because the recipients could not freely resell the interests and would lack control of it.

B&T's proposed giving plan contemplated making gifts of LLC units to the nieces over more than one year so decedent could take advantage of both the increase, to $700,000, in the "basic exclusion amount" used in determining the unified credit, see sec. 2010(c)(1)-(3), that was scheduled to take place in 2002, and the multiple gift tax annual exclusions under section 2503(b). The idea was for decedent to give the nieces, in 2001, LLC units in an amount not to exceed his "basic exclusion amount" ($675,000) plus the three $10,000 annual exclusions then available. He then would transfer any remaining value (in the form of LLC units) in 2002 or in a later year.

Pursuant to B&T's request, the nieces engaged Robert C. Schlegel, an appraiser at Houlihan Valuation Advisors (Houlihan), to value the interests in the prospective LLC.

**[*10]** III.     Implementation of the Plan

Pursuant to the foregoing giving plan, (1) on or about December 21, 2001, B&T registered the LLC as an Indiana limited liability company; (2) on or about December 24, 2001, by bill of sale, decedent transferred the 12 works of art to the LLC, receiving in exchange voting and nonvoting capital units in it; (3) on or about December 24, 2001, decedent and the nieces signed an operating agreement governing the LLC, which placed restrictions on transfers of capital units, required unanimous member consent for many actions relating to management of the LLC and its assets (i.e., the art), and provided that all controversies among members had to be referred to mediation and, if that were not pursued or it failed to resolve the dispute, to arbitration.  As of December 24, 2001, decedent owned 99% of the voting capital units and 98% of the nonvoting capital units in the LLC.  The balance of both was acquired by the nieces, one-third each, for cash.

On December 27, 2001, decedent, as "donor", executed three documents entitled "GIFT AND ACCEPTANCE OF CAPITAL UNITS", effective as of that date, each of which provided for the transfer of an unspecified number of voting and nonvoting capital units in the LLC to one of the nieces.  Each niece also signed the document as "donee", accepting the units transferred to her.  The documents left blank both the total number of voting and nonvoting capital units

**[*11]** in the LLC and the number of such units transferred to each niece. Similarly, "Exhibit A" to each agreement, entitled "Transfer Power", signed by decedent, left blank the number of voting and nonvoting capital units transferred by decedent to each niece.

On or about January 4, 2002, decedent and the nieces executed documents essentially identical to the December 27, 2001, documents, effective as of that date, except that there was no reference to the total number of voting and nonvoting capital units in the LLC. As in the case of the December 27, 2001, transfers, the documents left blank the actual number of such units transferred to each niece.

B&T counsel explained to decedent that, until they received the Houlihan appraisal valuing the interests in the LLC, the number of LLC capital units to be transferred to each niece must be left blank and would be filled in on the basis of the appraisal report so as to avoid gift tax on the transfers. B&T retained the signed originals of the foregoing documents (collectively, original 2001 and 2002 gift documents).

On or about March 31, 2002, Houlihan completed and forwarded to the nieces, copies to B&T counsel, its valuation of the interests in the LLC. On the basis of the Houlihan valuation report, which concluded that the net asset value of

**[*12]** the LLC was $1,763,500 as of "the two gift dates, December 27, 2001 and January 4, 2002", Mr. Kaltenmark, on or about April 11, 2002, computed the maximum number of LLC units to be transferred to the nieces under the original 2001 and 2002 gift documents. His computations revealed that the maximum number of LLC units that decedent would be able to transfer to the nieces in 2001 and 2002 without incurring any gift tax liability would leave decedent with 15.19% of the nonvoting capital units.

On or about April 11, 2002, the nieces met with Mr. Kaltenmark and expressed to him their unhappiness with that outcome because, ultimately, they would be coowners of the art with Bernice, whom decedent was soon to remarry. (Just a few days earlier, on April 5, 2002, decedent had executed a new will pursuant to which he left his entire estate to Bernice.) One of Mr. Kaltenmark's suggestions for avoiding coownership with Bernice was to have the nieces pay the gift tax that would be attributable to decedent's 2002 gift to them of the entire balance of the LLC units that decedent would hold after his 2001 gift to them. Mr. Kaltenmark opined that, as a net gift, the 2002 transfer would reduce the 2002 gift tax obligation, and he estimated that the tax on that gift would be $88,000 split three ways by the nieces. The nieces decided to follow Mr. Kaltenmark's suggestion that they pay the 2002 gift tax.

**[*13]** The B&T attorneys then completed the original 2001 and 2002 gift documents by eliminating the blanks and identifying the interests transferred. In addition, they modified the original 2001 and 2002 gift documents in several respects. None of the modifications affected the signature page of each document, which remained unchanged.

With respect to the 2001 gift documents, instead of merely filling in the blanks by inserting the number of voting and nonvoting capital units in the LLC to be transferred in 2001, the "WHEREAS" clause containing the blanks for the number of capital units that decedent wished to transfer to each niece was replaced by a new "WHEREAS" clause expressing, in pertinent part, decedent's desire to transfer to each niece "a number of Voting and Non-Voting capital units of the * * * [LLC] that is equal to * * * ($233,417.00) as determined by appraisal, provided that, the total amount of such units shall be composed of * * * (1/3) of Voting capital units owned by donor with the remainder of such amount consisting of Non-voting capital units of the Donor."

It appears that the $233,417 per niece was used in order to make certain that the total of LLC units transferred to the nieces in 2001would not exceed decedent's then-available "basic exclusion amount" of $675,000 plus $30,000 (the

[*14] three $10,000 annual exclusions available, one for each niece) or a total of $705,000.[6]

With respect to the 2002 gift documents, the blanks for the number of nonvoting capital units to be transferred were filled in. There were, however, two modifications made to the originals: (1) the paragraph providing for the donor's delivery to the donee of "a duly executed transfer power representing the units, which is attached hereto as Exhibit A" was omitted and a new paragraph was substituted therefor pursuant to which the donee agreed "to pay the gift taxes, if any, relating to the gift of the units, including * * * any gift taxes, penalties, and interest that may later correctly be assessed"; (2) consistent with that substitution, exhibit A to the original 2002 documents was omitted.[7]

The B&T attorneys then delivered the finalized 2001 and 2002 gift documents to the nieces.

---

[6]While it appears certain that the $233,417 limitation was designed to carry out decedent's and B&T's original intent to avoid any gift tax on the 2001 transfers to the nieces, it is not clear why the limitation for each transfer was not $235,000, which is exactly one-third of $705,000.

[7]Because the gift and acceptance agreements themselves specifically provided for decedent's transfer of the LLC capital units to the nieces, the B&T attorneys and the nieces probably thought it unnecessary and redundant to also require decedent's delivery to each niece of a separate "transfer power" pertaining to each niece's one-third share of those units.

**[\*15]** IV.    Decedent's Hiring of New Counsel

Presumably in connection with his decision to remarry Bernice, decedent decided to change his estate plan by removing the nieces as beneficiaries of his estate.  To that end, on or about April 1, 2002, decedent hired a new Indianapolis attorney, John Sullivan, to prepare a new will and perform related services.  On April 9, 2002, Mr. Sullivan faxed a letter to Ms. Fruehwald advising her of decedent's request that he prepare a revocation of a power of attorney previously prepared by her in favor of the nieces and enclosing decedent's revocation of that power of attorney together with a copy of a letter to the nieces, which also enclosed a copy of that revocation.  Upon receipt of that letter, even though she had never received a document from decedent or any other of his representatives expressly terminating her representation of decedent, Ms. Fruehwald assumed that that representation was terminated as of April 9, 2002, "with the exception of some loose ends that we had dealing with the transactions on the gifts", which she viewed as "probably more for * * * [the LLC] than for * * * [decedent] directly."

V.    The Indiana and New Jersey Litigation

A.    The Indiana Litigation

On June 4, 2002, decedent commenced an action against the nieces in the Marion County, Indiana, Marion Superior Court alleging among other claims that

**[*16]** "there has been no effective gift * * * or donation of the artwork to either the LLC or * * * [the nieces]", and demanding the return of the art to him.[8]  Pursuant to the LLC operating agreement, that issue was referred to private arbitration (Indiana arbitration).  According to the arbitrator, the issue before him was whether decedent "made a valid lifetime gift of * * * [the art] to * * * [the nieces]".

The arbitrator recognized the possibility "that within several months after he made the gift, * * * [decedent] had a change of heart and wanted the artwork to go to Bernice Sommers."  But he stated that the issue before him was "whether at the time of the alleged gifts * * * [decedent] knew what he was doing and intended to do it."  The arbitrator concluded that decedent "did know that he was in effect gifting the artwork to the Nieces, and that he intended to do what is reflected in the gifting documents."  With respect to the blanks in the original 2001 and 2002 gift documents, the arbitrator reiterated Ms. Fruehwald's explanation to decedent that "the blanks would be filled in when the appraisal of the LLC was received and * * * [B&T] knew what numbers should be put in the blanks to minimize gift tax."  The arbitrator further noted Ms. Fruehwald's testimony that decedent "understood this" and that "he gave her the authority * * * to fill in the blanks consistent with

---

[8]After decedent died, that action was maintained by petitioner.

[*17] her explanation to him." He then noted that, although decedent later (and before the blanks could be filled in) obtained new counsel, "he never revoked this authority to fill in the blanks." The arbitrator concluded that (1) decedent "made a valid irrevocable transfer of the twelve pieces of artwork to the LLC in December 2001" and (2) "he thereafter made valid gifts in December 2001 and January 2002 of all his capital shares of the LLC * * * to his Nieces." The arbitrator's award was dated September 2, 2005.

On April 17, 2007, the Marion Superior Court entered a final judgment confirming the arbitrator's award, dismissing the arbitrated claims, and awarding attorney's fees. Thereafter, on December 29, 2008, the Court of Appeals of Indiana sustained that confirmation of the arbitrator's award, rejecting, on procedural grounds, petitioner's claim that (1) the trial court erred in ordering the parties to arbitration and (2) the arbitration award should be vacated because it violated public policy. Sommers v. Sommers, 898 N.E.2d 1234 (Ind. Ct. App. 2008).

B.    The New Jersey Litigation

On April 30, 2007, petitioner filed a complaint in the Superior Court of New Jersey, Chancery Division: Bergen County Probate Part, docket No. P-175-07, seeking "apportionment to, and collection from * * * [the nieces] of estate taxes

**[*18]** or, in the alternative, for rescission and reformation and other relief with regard to * * * [the nieces]".  The complaint included six counts.

Count 1 alleges that decedent's 2001 and 2002 transfers of LLC units were not gifts, but rather, were revocable when made, and that, because decedent later, in effect, relinquished his power to revoke, the transfers were includable in decedent's gross estate under sections 2035 and 2038.  As a result, petitioner sought to apportion the resulting Federal and New Jersey estate tax liabilities to the nieces pursuant to New Jersey's estate tax apportionment law.

As an alternative to count 1, count 2 alleges that "the 2001 transfer was incomplete when made (due to the presence of the blanks that were not filled in as of December 31, 2001) and that, as a result, there was no (2001) gift for Federal gift tax purposes".  Instead, count 2 alleges that, if decedent did make gifts of his LLC units to the nieces, they "were gifted in their entirety in 2002, when the blanks were filled in."  Petitioner seeks "reformation" of the 2001 gifts "in order to reduce * * * [them] to zero" and of the 2002 gifts and acceptance documents so that they recite the nieces' alleged agreement to pay all gift and estate taxes and associated penalties and interest incurred in connection with the transfers.

As an alternative to both counts 1 and 2, count 3 seeks reformation of the 2001 gift by reducing it "to the maximum amount that could be made free of gift

[*19] tax"[9] and reformation of the 2002 gift so that the documents recite the nieces' alleged agreement to pay all taxes, penalties, and interest associated therewith.

A fourth alternative claim, count 4, alleges that, because the nieces promised to pay all gift and estate taxes associated with decedent's transfers of his LLC units, under principles of contract law and promissory estoppel (and New Jersey's apportionment statute) the nieces should be required to do so.

A fifth alternative claim, count 5, seeks rescission of the gifts on the basis of mutual mistake by decedent and the nieces or unilateral mistake by decedent because decedent's intent "to avoid all taxes associated with the transfers" cannot be realized if respondent's proposed gift and estate tax deficiencies are sustained and the nieces continue to refuse to pay all such tax, penalties, and interest.

The last alternative claim, count 6, asks reformation of the gifts of LLC units so that, on the basis of their value "as finally determined", the gifts equal "the maximum amount that leaves * * * [decedent's]" estate free of any Federal gift tax

---

[9]That, of course, is what B&T tried to do, but in the context of the Houlihan appraisal. Presumably, petitioner, aware of respondent's $3,555,000 appraisal of the art and of the resulting gift tax deficiency for 2001, sought to reduce the 2001 gift of LLC units in order to avoid or negate the impact of that deficiency.

**[*20]** liability with the remaining LLC units forming part of decedent's estate passing to Bernice under his will.

After reviewing the facts, the court concluded that (1) decedent intended to and did, in fact, give the 12 works of art (via his LLC units) to the nieces, (2) the nieces agreed to pay only gift tax, penalties, and interest associated with decedent's 2002 gifts of LLC units, and (3) decedent was not "misled[] or mistaken as to what the nieces would be responsible for", and he did nothing "based upon any alleged mistake or misunderstanding."[10]  On the basis of those findings, the Court held as follows:

> Dr. Sommers made a valid irrevocable transfer of the twelve pieces of artwork to the LLC in December 2001; he thereafter made valid, irrevocable gifts in December 2001 and January, 2002 of all his capital shares of the LLC to his nieces.  The gift [sic] were complete and irrevocable by Dr. Sommers and, subsequently, irrevocable by the Estate of Dr. Sommers.

Finding no basis for rescinding or reforming the gifts in the manner sought by petitioner, the court dismissed counts 2 to 6 with prejudice.  The court declined

---

[10]The court further noted that, although decedent, later, had concerns that the nieces might not "be in a financial position to absorb the taxes" and knew that the art was worth a great deal more than its initial appraised value, he did not, in his Indiana pleading, cite enhanced gift or estate tax exposure as grounds for setting aside the gifts.  Because he had an opportunity to make that argument in the Indiana litigation, the court held that he was precluded from raising it in the New Jersey litigation.

[*21] to do the same with respect to count 1 because (1) there had been no determination by this Court that, contrary to respondent's position, the LLC units are includable in decedent's gross estate, thereby generating apportionable taxes,[11] and (2) unless and until there was a final determination on that issue and on the valuation issue by this Court, the issue of apportionment was "not really ripe" for determination. Therefore, the court dismissed count 1 without prejudice.

On February 4, 2009, the foregoing decision was entered as a final judgment of the Court. On May 25, 2010, in an unpublished opinion, In re Estate of Sommers, 2010 WL 2089804 (N.J. Super. Ct. App. Div. 2010), the Appellate Division of the Superior Court of New Jersey affirmed that judgment in all respects. In so doing, it noted that both the Indiana arbitrator and the New Jersey Superior Court decided that decedent "intended to finally and irrevocably transfer ownership of the art to his nieces regardless of the possible tax consequences", a decision that the court found was "fully litigated * * * on the merits" and "supported by the evidence". Id. at *2.

---

[11]In the words of the New Jersey Superior Court judge, "I can not apportion to the nieces that which has been determined [by the Commissioner] not to have been includable in the Gross Tax Estate."

**[\*22]** VI.  Decedent's Estate and Gift Tax Returns

The Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, filed on behalf of decedent's estate included as one of the assets in decedent's gross estate "artwork" valued at $1,750,000, with a footnote stating that litigation might change that valuation.[12]

Previously, a Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return for 2001, signed by decedent, and a Form 709 for 2002, signed by Bernice as executrix of decedent's estate, had been filed, which reflected the December 27, 2001, and January 4, 2002, transfers of LLC units to the nieces as taxable gifts (2001 and 2002 gifts).  As stated above, petitioner argues herein that those transfers did not constitute completed gifts for Federal gift tax purposes.

Discussion

I.  Summary Judgment

A summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits or declarations, if any, show that there is no genuine

---

[12]We assume that inclusion of the art, rather than LLC units, as an asset of decedent's gross estate indicates an intent to apply secs. 2035 and 2038 to both the transfer of the art to the LLC and the transfer of LLC units to the nieces; i.e., to treat both transfers as incomplete for Federal estate and gift tax purposes.

**[*23]** dispute as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). A summary judgment may be made upon part of the legal issues in controversy. See Rule 121(a). As noted above, the motions do not raise any genuine dispute as to any material fact. Therefore, the legal issues addressed in the motions are ripe for summary judgment.

II.     The Date-of-Gift Issue

A.     The Parties' Arguments

1.     Respondent's Arguments

Respondent argues that petitioner is precluded from denying that decedent made taxable gifts of his LLC units to the nieces, in part, on December 27, 2001, and, in part, on January 4, 2002, when decedent and the nieces signed the original 2001 and 2002 gift documents. Respondent invokes as an affirmative defense to any contrary claim by petitioner the doctrine of collateral estoppel or issue preclusion because appellate courts in both Indiana and New Jersey affirmed decisions holding that decedent made irrevocable transfers of his LLC units on those dates. With respect to the December 27, 2001, transfer of LLC units, respondent also argues that decedent's signing of the 2001 gift tax return reporting that transfer as a 2001 taxable gift constitutes an admission that he ceded dominion and control of those interests (i.e., that he made a taxable gift thereof) in 2001.

**[*24]** Respondent argues, in the alternative, that, if we agree with petitioner that decedent's transfers of LLC units to the nieces were not completed gifts for Federal gift tax purposes until the blanks on the original 2001 and 2002 gift documents were filled in and the completed documents delivered to the nieces on April 11, 2002, then decedent made taxable gifts of those interests in 2002.

### 2. Petitioner's Arguments

Petitioner argues that the 2001 and 2002 gift documents, because they were incomplete when signed, did not effect completed gifts of the LLC units for Federal gift tax purposes. Rather, because the 2001 and 2002 gifts were made in blank, decedent necessarily retained the power to alter, amend, revoke, or terminate those transfers, a power that he relinquished on April 11, 2002, by permitting B&T to deliver the completed gift documents to the nieces.

Petitioner points to section 2038(a)(1), which includes in a decedent's gross estate interests in property transferred after June 22, 1936, where the transfer on the date of death was subject to change through the decedent's exercise of a power to "alter, amend, revoke, or terminate" the transfer, and to section 2035(a), which requires the inclusion in a decedent's gross estate of property interests with respect to which the decedent relinquished, within three years of death, a section 2038 power to alter, amend, revoke, or terminate the transfer thereof. On the basis of

**[\*25]** those provisions, petitioner argues that the LLC units transferred to the nieces "remained part of the decedent's gross estate"[13] and that "no gift taxes should therefore be imposed".

Petitioner argues that the determination of a decedent's gross estate for Federal tax purposes is governed by Federal, not State, law, and that pursuant to Federal law there were no completed gifts of LLC units to the nieces on December 27, 2001, or January 4, 2002.

Petitioner also argues that the Indiana and New Jersey decisions do not collaterally estop petitioner from arguing for the application of sections 2035 and 2038 herein because (1) the issues argued in the State courts did not involve the applicable Federal gift tax regulations or the foregoing Code sections, and (2) to the extent it is relevant herein, the New Jersey trial court's determination that the 2001 and 2002 gifts were irrevocable was not "essential" to its decision in the case, as required by Peck v. Commissioner, 90 T.C. 162, 167 (1988), aff'd, 904 F.2d 525 (9th Cir. 1990).[14]

---

[13]It appears that petitioner could have based her argument on sec. 2038(a)(1) alone as it, like sec. 2035(a), includes in the gross estate interests in given property with respect to which the decedent relinquished a power to alter, amend, revoke, or terminate the gift within three years of the decedent's death.

[14]Petitioner also argues that, should the date-of-gift issue be "perceived as

(continued...)

[*26]     3.     Intervenors' Argument

Like respondent, intervenors argue that, on the basis of the Indiana and New Jersey State court decisions, respondent is collaterally estopped from arguing that the decedent failed to make completed gifts to the nieces for Federal gift tax purposes on December 27, 2001, and January 4, 2002.

B.     Analysis

1.     Introduction

Petitioner's argument that the LLC units transferred by decedent to the nieces are includable in decedent's gross estate pursuant to sections 2035(a) and 2038(a)(1) appears to be motivated by a desire to minimize or eliminate the estate's gift tax liability and a belief that any resulting increase in its estate tax liability is unlikely to be significant.  That is because petitioner believes that estate tax  attributable to the

---

[14](...continued)
involving a mixed question of fact and law, or a question of fact", sec. 7491(a) applies to shift the burden of proof to respondent with respect to any factual issues. As noted supra note 4, respondent also suggests that petitioner's motion raises issues of fact, a suggestion that we have rejected as inconsistent with the parties' agreement (in which we concur) that the issue herein is a legal issue ripe for summary judgment.  Respondent argues that sec. 7491(a) applies only in the context of a "court proceeding", i.e., a trial, not in the context of a summary judgment proceeding, and that it would be premature to assign burden of proof at this juncture.  We agree with respondent.  Unless the parties settle the cases, there will be a trial involving factual issues; e.g., valuation of the art and/or the LLC units. Then it will be appropriate to consider the application of sec. 7491(a).

**[*27]** inclusion of the LLC units in decedent's gross estate, unlike any additional gift tax payable by the estate, will be apportioned to the nieces as the recipients of the LLC units under New Jersey's equitable apportionment statute, discussed infra, thereby increasing the marital deduction for the balance of decedent's estate, which goes to Bernice. See sec. 2056(b)(4)(A).

Presumably, petitioner fears a significant gift tax liability because: (1) it is possible that this Court will agree with respondent that the Houlihan appraisal substantially undervalued the LLC units and the underlying art, and (2) the New Jersey court specifically found that the completed 2001 and 2002 gift documents made the nieces responsible for only the 2002 gift tax, meaning that an enhanced valuation of the LLC units that decedent gave to the nieces in 2001 will generate a substantial gift tax payable from the estate rather than no gift tax, which would be the case were we to adopt the Houlihan appraisal.

2. Application of Collateral Estoppel

a. Principles of Collateral Estoppel

We have summarized our position with respect to collateral estoppel as follows:

> The doctrine of issue preclusion, or collateral estoppel, provides that, once an issue of fact or law is "actually and necessarily determined by a court of competent jurisdiction, that determination is

**[\*28]** conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979) (citing <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 326 n.5 (1979)). Issue preclusion is a judicially created equitable doctrine whose purposes are to protect parties from unnecessary and redundant litigation, to conserve judicial resources, and to foster certainty in and reliance on judicial action. See, e.g., <u>id.</u> at 153-154; <u>United States v. ITT Rayonier, Inc.</u>, 627 F.2d 996, 1000 (9th Cir. 1980). This Court in <u>Peck v. Commissioner</u>, 90 T.C. 162, 166-167 (1988), affd. 904 F.2d 525 (9th Cir. 1990), set forth the following five conditions that must be satisfied prior to application of issue preclusion in the context of a factual dispute (the <u>Peck</u> requirements):

"(1) The issue in the second suit must be identical in all respects with the one decided in the first suit.

(2) There must be a final judgment rendered by a court of competent jurisdiction.

(3) Collateral estoppel may be invoked against parties and their privies to the prior judgment.

(4) The parties must actually have litigated the issues and the resolution of these issues must have been essential to the prior decision.

(5) The controlling facts and applicable legal rules must remain unchanged from those in the prior litigation." [Citations omitted.]

<u>Monahan v. Commissioner</u>, 109 T.C. 235, 240 (1997) (alteration in original).

We have also pointed out that

collateral estoppel focuses on the identity of issues, not the identity of legal proceedings. * * * [c]ollateral estoppel may be applied to issues of fact or law previously litigated even though the claims differ. Therefore, so long as identity of issues is present and the other requirements of <u>Peck v. Commissioner</u> * * * are satisfied, * * *

[*29] collateral estoppel [applies] to issues previously decided by
the State and Federal courts, even though * * * [the taxpayer's]
tax liability was not there involved.

Bertoli v. Commissioner, 103 T.C. 501, 508 (1994).

In considering whether preclusive effect attaches to the findings of a State

court, we inquire whether the courts of the relevant State (in these cases, Indiana and

New Jersey) would accord such findings preclusive effect. See Estate of

Chemodurow v. Commissioner, T.C. Memo. 2001-14, 2001 WL 55774, at *8. As

petitioner points out in her memorandum of law in opposition to respondent's motion,

both Indiana and New Jersey permit issue preclusion under criteria similar to the

requirements set forth in Peck v. Commissioner, 90 T.C. at 166-167 (Peck

requirements). See, e.g., Miller Brewing Co. v. Ind. Dep't of State Revenue, 903

N.E.2d 64, 68 (Ind. 2009); In re Estate of Dawson, 641 A.2d 1026, 1034-1035 (N.J.

1994). Respondent concurs.

        b.     Analysis

        (1)     Introduction

Petitioner argues that three of the five Peck requirements have not been

satisfied herein. According to petitioner:

Peck requirements (1), (4) and (5) are not satisfied here, because the
issues are not "identical in all respects" with the issues in the prior
[Indiana and New Jersey] proceedings; resolution of the retained

**[*30]** powers issue and the relinquishment issue were not "essential" to those determinations; and the prior proceedings were not analyzing IRC §§ 2035 and 2038, and so were not applying the same "legal rules."

With respect to Peck requirements (1) and (5) (identity of issues and applicability of the same legal rules), petitioner argues that the Indiana and New Jersey litigation involved legal issues and legal rules different from those involved herein. With respect to requirement (4) (whether resolution of the issue was "essential" to the prior decision), petitioner argues that the determination by the Superior Court of New Jersey that decedent "made valid, irrevocable gifts in December 2001 and January 2002 of all of his capital shares of the LLC to his nieces" was not "necessary" or "essential" to that court's decision. We address each of those arguments in turn.

### (2) Identity of Issues and Legal Principles

### (a) The Indiana Arbitration

Petitioner acknowledges the Indiana arbitrator's determination that the gifts (of art to the LLC and of LLC units to the nieces) were "valid". But she notes that the arbitration award failed to resolve (1) "the issue of what powers, if any, Doctor Sommers retained * * * to alter, amend, revoke and/or terminate * * * [the gifts]", and (2) "the issue of whether any one or more of such powers were relinquished"

**[*31]** (retained powers and relinquishment issues). Petitioner also notes that, because there was no reference to sections 2035(a) and 2038, the arbitrator "was not applying the legal rule at issue here." In that connection, petitioner states in a footnote: "The existence of one or more [of such] retained powers * * * would not have changed the 'completeness' of the transfers for state law purposes unless * * * actually exercised." Petitioner concludes that "the arbitrator found that * * * [decedent's] gifts of his interests in * * * [the] LLC to his Nieces in December 2001 and December [sic] 2002 were revocable but that * * * [decedent] had not exercised his power to revoke." That conclusion is apparently based on the fact that the arbitrator described the 2001 and 2002 gifts as "valid" whereas he had termed decedent's transfer of the art to the LLC a "valid irrevocable transfer".

In our view, the foregoing distinction is merely indicative of a, perhaps unconscious, distinction on the part of the arbitrator between the normal characterization of a transfer to an entity and a gift to an individual. Transfers of assets to an entity (e.g., a corporation, partnership, or LLC) are generally referred to as capital contributions or transfers whereas transfers to individuals without consideration are generally referred to as gifts. That, in fact, is the distinction made by the Indiana arbitrator; i.e., he references a "transfer" of the art to the LLC and a

**[\*32]** "gift" of the LLC units to the nieces.[15]  In order to make clear that he considered the former to be an irrevocable transfer, he specifically concluded that "Dr. Sommers made a valid irrevocable transfer of the \* \* \* artwork to the LLC", but because, under Indiana law (discussed infra), a "valid gift" is, by definition, irrevocable, he did not have to redundantly refer to the transfers of LLC units to the nieces as valid irrevocable gifts.[16]

In Kraus v. Kraus, 132 N.E.2d 608, 610-611 (Ind. 1956) (quoting Bulen v. Pendleton Banking Co., 78 N.E.2d 449, 456 (Ind. Ct. App. 1948)), the Supreme Court of Indiana described the requirements for a valid inter vivos gift under Indiana law as follows:

> "To make a valid gift inter vivos there must be both an intention to give and a stripping of the donor of all dominion or control over the given thing and a change of title must be irrevocable.  \* \* \* The transfer must be so complete that, if the donor again attempts to assume control of the property, without the consent of the donee, he becomes liable as a trespasser."  [Citations omitted.]

---

[15]In its opinion, discussed infra, the Superior Court of New Jersey makes the same distinction.

[16]Although the arbitration award cites no legal authorities, because it was subject to review (and was, in fact, reviewed) by the Indiana State courts we must assume that, in deciding that the 2001 and 2002 gifts were "valid gifts" the arbitrator applied Indiana law.  That assumption is given credence by the arbitrator's statement that "[t]he parties agree that Indiana law applies to this proceeding."

**[*33]** See also <u>Lewis v. Burke</u>, 226 N.E.2d 332, 336 (Ind. 1967), in which the same court stated:

> We therefore conclude that the law in Indiana is such that gift or transfer of title to tangible as well as intangible personal property may be made by written instrument (or deed of gift) stating a present intent. This may be done without a physical delivery of the property at the time, if the written instrument is delivered.

Accord <u>Fowler v. Perry</u>, 830 N.E.2d 97, 105 (Ind. Ct. App. 2005), in which the Court of Appeals of Indiana described the criteria for a valid inter vivos gift as follows:

> In addition to the competency of the donor, a valid inter vivos gift--i.e., an absolute gift--occurs when: (1) the donor intends to make a gift; (2) the gift is completed with nothing left undone; (3) the property is delivered by the donor and accepted by the donee; and (4) the gift is immediate and absolute. Thus, once delivery and acceptance of a gift inter vivos occurs, the gift is irrevocable and a present title vests in the donee. * * * [Citations omitted.]

Thus, we must assume that, in finding a "valid gift" under Indiana law, the arbitrator found that the 2001 and 2002 gifts stripped decedent "of all dominion and control over" his LLC units, <u>see</u> <u>Kraus</u>, 132 N.E.2d at 610, that the "change of title" was "irrevocable", <u>see</u> <u>id.</u>, that the gift was "completed with nothing left undone" and was "immediate and absolute", <u>see</u> <u>Fowler</u>, 830 N.E.2d at 105, and that delivery of the original gift documents to B&T acting as agent for both decedent and the nieces (pending postvaluation ascertainment of the number of LLC units necessary

**[\*34]** to satisfy the gift terms) was satisfactory delivery of the LLC units to the nieces,

see Lewis, 226 N.E.2d at 336; Fowler, 830 N.E.2d at 105.  Therefore, we disagree

with petitioner's characterization of the arbitrator's finding as a finding that the 2001

and 2002 gifts were revocable.  To the contrary, on the basis of Indiana law, the

arbitrator's finding that those transfers constituted "valid gifts" constitutes a finding

that the gifts were irrevocable and absolute.  It is, therefore, tantamount to a finding

that decedent did not retain the power to "alter, amend, revoke, or terminate" the gifts

within the meaning of section 2038.[17]

Moreover, that finding also must be considered a finding that those gifts

satisfied the requirement of section 25.2511-2, Gift Tax Regs., that the donor cede

dominion and control over the property in order for there to be a gift for Federal gift

tax purposes.

---

[17]In his opinion, the arbitrator observed:  "While Dr. Sommers later obtained new counsel, he never revoked * * * [B&T's] authority to fill in the blanks".  In the light of the arbitrator's decision that the 2001 and 2002 gifts met the requirements of Indiana law for a "valid gift", we do not view that statement as an indication that he found those gifts to be revocable.  Rather, what is suggested as being revocable is B&T's authority to fill in the blanks, not the parties' agreement that the blanks had to be filled in by someone (old counsel or new) in a manner consistent with the parties' intent to avoid gift tax on the gifts of LLC units.  Nor was the arbitrator's statement an observation as to what the legal outcome, under Indiana law, would have been had the nieces brought suit to enforce the terms of the 2001 and 2002 gifts, assuming decedent had, in fact, sought to revoke the 2001 and 2002 gifts by retaining new counsel with instructions to terminate those gifts by not filling in the blanks.

**[*35]** Thus, although the retained powers and relinquishment issues were not directly presented to the arbitrator, his decision that the 2001 and 2002 gifts constituted "valid" gifts under Indiana law was tantamount to a rejection of petitioner's argument that decedent retained a section 2038 power to "alter, amend, revoke, or terminate" those gifts. Therefore, we find that the legal issue addressed and decided in the Indiana arbitration is identical in all material respects to the retained powers and relinquishment issues that petitioner raises herein under sections 2038 and 2035, thereby satisfying Peck requirements (1) and (5).

(b)     The New Jersey Litigation

The Superior Court of New Jersey, unlike the Indiana arbitrator, specifically found that decedent "made valid, irrevocable, gifts in December 2001 and January, 2002 of all his capital shares of the LLC to his nieces." (Emphasis supplied.) Petitioner attempts to sidestep that finding by arguing that that "determination of state property interests does not and cannot foreclose consideration of the appropriate federal tax treatment." Petitioner argues that sections 2035 and 2038 apply to both "incomplete" and "'completed' irrevocable transfers as long as, at some point, the transferor held one or more powers to amend, alter, revoke and/or terminate the transfers". Petitioner then states that decedent necessarily retained those powers because (1) "the transfers were made via gift documents in blank for

[*36] the very purpose of permitting * * * [the exercise of those powers]", (2) the gift documents were left with decedent's counsel "and so were subject to his recall, amendment and/or alteration at any time prior to completion and delivery", and (3) the documents "were in fact altered and amended in a manner potentially adverse to the donees (by making them responsible for the gift taxes)".

The question is whether the superior court's finding of an irrevocable gift was tantamount to a rejection of petitioner's argument that that court did not decide or even address the section 2038 retained powers issue. Here, as in the case of the Indiana arbitration, the answer to that question depends upon the effect of the court's finding under State (in these cases, New Jersey) law.

In Pascale v. Pascale, 549 A.2d 782, 786 (N.J. 1988), the Supreme Court of New Jersey described the New Jersey law requirements for a valid gift as follows:

> In general, a valid gift has three elements. First, the donor must perform some act constituting the actual or symbolic delivery of the subject matter of the gift. Second, the donor must possess the intent to give. Third, the donee must accept the gift. R. Brown, Personal Property § 7.1, at 77-78 (2d ed. 1975). Our cases also recognize an additional element, the relinquishment by the donor "of ownership and dominion over the subject matter of the gift." In re Dodge, 50 N.J. 192, 216, 234 A.2d 65 (1967). * * *

In In re Dodge, 234 A.2d 65, 77-78 (N.J. 1967), the court's earlier opinion cited in Pascale, the court described the rule thus:

**[*37]** The requisite elements of a valid <u>inter vivos</u> gift are well known.  There must be (1) an unequivocal donative intent on the part of the donor; (2) an actual or symbolical delivery of the subject matter of the gift; and (3) an absolute and irrevocable relinquishment by the donor of ownership and dominion over the subject matter of the gift, at least to the extent practicable or possible, considering the nature of the articles to be given.  \* \* \*

In finding that decedent "made valid, irrevocable gifts in December 2001 and January, 2002 of all his capital shares of the LLC to his nieces" the Superior Court of New Jersey necessarily found (1) "an unequivocal donative intent" on the part of the decedent to give the LLC units to the nieces,[18] (2) at least a "symbolic delivery" of the LLC units on December 27, 2001, and January 4, 2002, pursuant to the execution of the original 2001 and 2002 gift documents, and (3) "an absolute and irrevocable relinquishment by \* \* \* [decedent] of ownership and dominion over \* \* \* [the LLC shares]".  As in the case of the Indiana arbitration, the court's finding that the 2001 and 2002 gifts met the foregoing requirements for a gift under New Jersey law necessarily entails a finding that decedent did not retain the right to "alter, amend, revoke, or terminate" those gifts within the meaning of section 2038,

---

[18]We recognize that donative intent, which may be a State law requirement for a valid gift, is not a requirement of Federal law in order to find a gift for Federal gift tax purposes.  <u>See, e.g.</u>, <u>Wells Fargo Bank N.M., N.A. v. United States</u>, 319 F.3d 1222, 1226 (10th Cir. 2003).  That same court noted, however, that "a donor's intent to make a gift may be a helpful factor in the ultimate determination of whether a gift has been made, for federal tax purposes".  <u>Id.</u>

[*38] even though that issue was not directly addressed by the court. A donor cannot be said to possess "an unequivocal donative intent" and to have absolutely and irrevocably relinquished "ownership and dominion over the subject matter of the gift" and still be said to have retained the foregoing section 2038 powers. Rather, a gift meeting those conditions easily falls within the requirements of section 25.2511-2, Gift Tax Regs., for a taxable gift. Therefore, as in the case of the Indiana arbitration, we find that the issue addressed and decided by the Superior Court of New Jersey is identical in all material respects to the retained powers and relinquishment issues that petitioner raises herein.

It is true that the superior court dismissed, without prejudice, count 1 of petitioner's complaint, which was the only count to affirmatively allege (as a basis for the apportionment of estate taxes to the nieces under New Jersey's equitable apportionment statute) that the 2001 and 2002 gifts "were revocable, and are included in * * * [decedent's] estate under IRC sections 2038 and 2035", thereby implying the court's recognition that petitioner might prevail on that claim. But, in dismissing count 1 without prejudice, the court reiterated its conclusion that decedent's "gift of the artwork was complete and irrevocable in December 2001 and January 2002 * * * [and] -- as the arbitrator found and I find -- effective as of when * * * decedent signed the gifting documents." Having noted respondent's

[*39] determination that "the artwork is not part of * * * [decedent's] gross estate," the court declined to "consider imposing estate tax liability upon the nieces" under such circumstances.  The court then stated that, given petitioner's challenge, in this Court, to respondent's position regarding (1) inclusion of the LLC units in decedent's estate and (2) "the values attributed by the IRS to the artwork", the estate tax apportionment issue was "not really ripe", because "[t]here has * * * been no final determination of the amount due and payable by the fiduciary."  In the light of the court's reasoning, we do not view its dismissal of count 1 without prejudice as an indication that it might consider the 2001 and 2002 gifts to be revocable gifts under  New Jersey and, by extension, Federal tax law.  At most, the court's action indicates a recognition that this Court might disagree with its (and respondent's) conclusion to the contrary.  Moreover, the dispute in this Court over the valuation of the art and the resulting uncertainty regarding the amount of any estate tax liability that might be attributable to the section 2035(b) inclusion, in decedent's gross estate, of gift tax relating to the LLC units was probably sufficient, by itself, to persuade the Superior Court of New Jersey that a final decision on the estate tax apportionment issue was premature.

**[*40]**                                        (c)     Conclusion

We find that the Indiana arbitration, the New Jersey litigation, and these cases

all involve the same issue, applying the same legal principles; and that the Indiana

arbitrator and the Superior Court of New Jersey both resolved that issue in favor of

the nieces and against petitioner by finding that the 2001 and 2002 gifts were absolute

and irrevocable and, therefore, not subject to alteration, amendment, revocation, or

termination by decedent.

                              (3)     Whether the State Determinations of the Date-of-Gift
                                      Issue Were Essential to Those Decisions

                              (a)     The Indiana Arbitration

Decedent's complaint filed in the Marion Superior Court alleges, in part, that

"there has been no effective gift of the artwork * * * to either the LLC or * * * [the

nieces]", and it seeks the return of the art to him.  The arbitration concluded with the

arbitrator's decision that decedent "made a valid irrevocable transfer of * * * [the art]

to the LLC in December 2001 * * * [and] valid gifts in December 2001 and January

2002 of all his capital shares of the LLC * * * to his Nieces" (in effect, an indirect gift

of the art to the nieces).

It is beyond dispute that, in a lawsuit denying the existence of a gift from one

party to another, a determination that there has been such a gift must be considered

**[*41]** "essential" to the decision to deny the donor's demand that the property be returned to him, and we so hold.[19]

### (b)    The New Jersey Litigation

Petitioner states that "the issue in New Jersey was whether * * * [the 2001 and 2002 gifts] were induced by a mistake as to tax consequences."  Petitioner then argues:  "It would not have mattered for this purpose if they were effective immediately, revocable or irrevocable".  In fact, only count 5 of the complaint alleges mutual mistake by the parties or unilateral mistake by decedent as to the tax consequences of the gifts should respondent's deficiencies be sustained.  Thus, petitioner's characterization of "the issue in New Jersey" pertains to only one of the six counts in petitioner's New Jersey complaint.

Petitioner then argues that only in count 1, seeking apportionment of estate taxes to the nieces, did she raise the retained-powers-and-relinquishment issues, as the court was specifically asked to find that the 2001 and 2002 gifts were includable in decedent's gross estate under sections 2035 and 2038, admittedly the principal issue in these cases.  But because count 1 was dismissed without prejudice, with the result that there was no "analysis of the standards of IRC Sections 2035(a) or 2038",

---

[19]Petitioner does not argue to the contrary, presumably relying upon her position that collateral estoppel is inapplicable because of a lack of issue identity between the Indiana arbitration and litigation and these cases.

[*42] petitioner argues the court's reference to those sections in connection with its finding that the 2001 and 2002 gifts were irrevocable "cannot give rise to issue preclusion in this proceeding." We agree, but note that count 2, which the court did dismiss with prejudice, alleges that "the 2001 transfer was incomplete when made" and that, if decedent did make a gift of his LLC units to the nieces, they "were gifted in their entirety in 2002, when the blanks were filled in." Petitioner's position, in effect, was that the 2001 and 2002 gifts were incomplete. Thus, petitioner's allegations in count 2 squarely present the issue, also presented in these cases, of whether the 2001 and 2002 gifts were absolute and irrevocable, and the court's finding, under New Jersey law, that they were absolute and irrevocable obviously was "essential" to its dismissal of count 2 with prejudice.

(c)     Conclusion

The findings by both the Indiana arbitrator and the Superior Court of New Jersey that the 2001and 2002 gifts were valid, completed gifts under Indiana and New Jersey law, respectively, were essential to the decisions in those cases.

c.     Conclusion

Petitioner is collaterally estopped by both the Indiana and New Jersey decisions from arguing (1) that the 2001 and 2002 gifts were not gifts for Federal gift tax purposes and (2) that, in making those gifts, decedent retained a section

 **[*43]** 2038(a)(1) power to "alter, amend, revoke, or terminate" those gifts until that power was relinquished on April 11, 2002.

        3.        <u>Alternative Analysis Assuming Collateral Estoppel<br>Is Inapplicable</u>

Even if we were to disregard respondent's and intervenors' issue preclusion argument, we would reach a conclusion consistent with that of the Indiana arbitrator and the Superior Court of New Jersey regarding the nature of the 2001 and 2002 gifts under Indiana and New Jersey law, and find that those gifts were taxable gifts under Federal law.[20]

Petitioner appears to consider it axiomatic that the mere existence of blank spaces in the 2001 and 2002 gift documents, to be filled in at a later date, necessarily means that decedent retained section 2038 powers, which he did not relinquish until those blanks were filled in and the LLC units were given to the nieces. Thus, petitioner states: "Since it is indisputable that the gift documents were signed in

---

[20]Because decedent was an Indiana resident and physically present in Indiana when he made the 2001 and 2002 gifts, presumably we must apply Indiana law in making a de novo determination as to the nieces' legal interest in the LLC units as a result of those transfers, while Federal law would determine how those interests should be taxed. <u>See, e.g.</u>, <u>United States v. Mitchell</u>, 403 U.S. 190, 197 (1971); <u>Jones v. Commissioner</u>, 129 T.C. 146, 150 (2007), <u>aff'd</u>, 560 F.3d 1196 (10th Cir. 2009). Because we have determined that a valid gift under Indiana law constitutes a taxable inter vivos gift under Federal law, we analyze the 2001 and 2002 gifts under principles consistent with both.

**[*44]** blank <u>and subject therefore to one or more retained powers to alter, amend, revoke and/or terminate</u>, the question is whether Dr. Sommers relinquished * * * one or more of those powers." (Emphasis supplied.) We disagree. We interpret the 2001 and 2002 gift documents in the context of the overall agreement among decedent and the nieces, which was for him to give his LLC units to them free of any obligation on his part to pay gift tax. On December 27, 2001, and January 4, 2002, the actual number of LLC units that decedent could transfer on those dates, free of gift tax, was unknown because the parties had not yet received the Houlihan valuation. The parties agreed, however, that once they had received the Houlihan valuation the blank LLC share amounts would be filled in on the basis of that valuation. Thus, the blanks manifested the parties' intent to have B&T complete the gift documents consistent with their agreement that decedent give his LLC units to the nieces free from Federal gift tax. The parties' intent with respect to the blanks was to have B&T carry out the terms of the original agreement, not to grant decedent the right to alter, amend, revoke, or terminate it. When the Houlihan valuation came in higher than expected, B&T advised the nieces that both prongs of their agreement with decedent could not be realized because decedent could not transfer all of his LLC units and still avoid gift tax; i.e., the 2002 gift would be subject to tax. The nieces and B&T were able to preserve the terms of the original agreement by having

[*45] the nieces agree to pay the 2002 gift tax associated with the 2002 gift (a solution to the problem that had been discussed during the nieces' initial meeting with Ms. Fruehwald), and the original 2002 gift document was modified to reflect that undertaking on the part of the nieces. That modification and the other (nonsubstantive) modifications to the 2001 and 2002 gift documents carried out the parties' original agreement; they did not alter or amend it.[21]

In essence, filling in the blanks was to be a ministerial act of completing, not revising or abandoning, the terms of the parties' original agreement. The one substantive change that did occur (the nieces undertaking to pay any gift tax) was

---

[21]As noted above, decedent's execution of the 2001 and 2002 gift documents and their delivery to B&T, who held them on behalf of all parties pending receipt of the Houlihan valuation, was sufficient, under Indiana law, to give the LLC units to the nieces, even though the execution and delivery of the gift documents was unaccompanied by physical delivery of the LLC units themselves. See Lewis v. Burke, 226 N.E.2d 332, 336 (Ind. 1967); see also Crawfordsville Trust Co. v. Elston Bank & Trust Co., 25 N.E.2d 626, 637 (Ind. 1940) ("A written assignment * * * which makes a present gift of personal property which is in the possession of a third person, which assignment is delivered to the assignee and notice thereof given to the one in possession, makes a valid completed gift which the donor can not revoke. Such a written assignment, therefore, takes the place of delivery."). B&T, which organized the LLC, was, presumably, in possession of the LLC units, and its attorneys, as drafters of the 2001 and 2002 gift documents and witnesses to their execution, obviously had "notice" of the execution and delivery of those documents. Moreover, a "valid, completed gift" under Indiana law must, consistent with sec. 25.2511-2(b), Gift Tax Regs., strip the donor of "all dominion or control over", in these cases, the LLC units, see Kraus v. Kraus, 132 N.E.2d 608, 610 (Ind. 1956), thereby constituting a gift under Federal gift tax law.

**[\*46]** required and previously contemplated as a means of satisfying the one condition that had been built into the original agreement: that decedent not be subject to gift tax. That change enabled decedent to give all, rather than a portion, of his LLC units to the nieces, tax free, just as the parties intended. Moreover, decedent's acquiescence in B&T's distribution to the nieces of the completed 2001 and 2002 gift documents in April 2002 constitutes further evidence that those documents did, in fact, reflect and carry out his understanding of the parties' original agreement.[22]

C. Conclusion

Decedent made taxable gifts to the nieces on December 27, 2001, and January 4, 2002, and did not retain the power to "alter, amend, revoke, or terminate" those gifts within the meaning of section 2038. As a result, the LLC units are not includable in decedent's gross estate. Therefore, respondent's motion for partial

---

[22]The parties intended to limit any gift tax liability to 2002 and to make the nieces responsible for that liability. Thus, they and the B&T attorneys appear to have disregarded the possibility that respondent might successfully increase the valuation of the art and, hence, of the LLC units, thereby creating gift tax deficiencies for both 2001 and 2002. Because we have decided that decedent made taxable gifts to the nieces in 2001 and 2002, we anticipate that petitioner will pursue her alternative claim, set forth in the amended petition, that we should limit the 2001 gift to the maximum number of LLC units that can pass to the nieces free of Federal gift tax for that year with the balance of the units deemed given to them in 2002, the year for which they have undertaken responsibility to pay gift tax. See supra note 3.

**[\*47]** summary judgment on the date-of-gift issue will be granted and petitioner's motion for partial summary judgment on that issue will be denied.[23]

III.    Need To Redetermine Petitioner's Estate Tax Deficiency

In the light of our holding that the LLC units are not includable in decedent's gross estate, there is no need to redetermine the estate's estate tax deficiency arising out of such an inclusion. We agree with petitioner, however, that the section 2035(b) requirement to include in decedent's gross estate gift tax on gifts made within three years of death may require (petitioner argues it will require) a redetermination of the estate's Federal estate tax liability. That is not because there is no gift tax due on the 2001 and 2002 gifts (and, hence, no section 2035(b) inclusion) as petitioner argues, but because we may find that decedent and the estate (in filing gift tax returns) undervalued the LLC units given to the nieces in 2001 and 2002, and, as a result, underpaid the gift tax due with respect to those gifts. Moreover, such a finding would also increase the amount of decedent's "adjusted taxable gifts" subject to estate tax under section 2001(b)(1)(B). But until we resolve the valuation issue and, in fact, find that the LLC units were undervalued at the time of the 2001 and 2002

---

[23]In resolving the date-of-gift issue in respondent's and intervenors' favor, we have not considered nor given any weight to respondent's argument that decedent's signing and filing of a Form 709 for 2001 in which he reported a gift of LLC units to the nieces constituted decedent's admission that he made that gift on December 27, 2001, rather than on April 11, 2002.

**[\*48]** gifts, it would be premature to grant petitioner's motion. Therefore, we will deny petitioner's motion for a ruling that we must redetermine the estate tax determined in the estate tax notice of deficiency.

IV. The Estate Tax Apportionment Issue

Petitioner asks us to rule that New Jersey's estate tax apportionment statute is applicable herein to apportion all Federal estate tax to the nieces as recipients of the LLC units so that no portion of that tax will reduce the estate tax marital deduction. Respondent and intervenors both argue that it would be premature for this Court to make a determination as to the apportionment of estate taxes under the New Jersey apportionment statute, essentially because the amount of estate taxes that would be subject to apportionment is unknown until the substantive issues in the case have been resolved.

The New Jersey estate tax apportionment statute is typical of many such State statutes, generally referred to as "equitable apportionment" statutes. See Estate of McCoy v. Commissioner, T.C. Memo. 2009-61.[24] As we stated in Estate of Leach v. Commissioner, 82 T.C. 952, 963-964 (1984), aff'd without published opinion, 782

---

[24]The constitutionality of State apportionment statutes was established in Riggs v. Del Drago, 317 U.S. 95 (1942), and it is now an accepted rule of law that State law determines the manner in which an estate's Federal estate tax burden is allocated or apportioned among its assets. See, e.g., Estate of Phillips v. Commissioner, 90 T.C. 797, 799 (1988).

**[\*49]** F.2d 179 (11th Cir. 1986): "The general purpose of many apportionment statutes is to require that those persons who receive gifts from the decedent's estate, which gifts are included in the taxable estate and which thereby contribute to the tax liability, shall pay their share of the tax."

The New Jersey law requiring equitable apportionment of both Federal and New Jersey estate taxes is contained in N.J. Stat. Ann. secs. 3B:24-2 and 3B:24-4 (West 1983 & Supp. 2012), which provide, in relevant part, as follows:

> Whenever a fiduciary has paid or may be required to pay an estate tax under * * * New Jersey or * * * United States [law] upon or with respect to any property required to be included in the gross tax estate of a decedent * * * the amount of the tax, except in a case where a testator otherwise directs in his will * * *

> *      *      *      *      *      *      *

> shall be apportioned to each of the transferees as bears the same ratio to the total tax as the ratio which each of the transferees' property included in the gross tax estate bears to the total property entering into the net estate for purposes of that tax, and the balance of the tax shall be apportioned to the fiduciary * * *

> Any deduction allowed under the law imposing the tax * * * shall inure to the benefit of the fiduciary or the transferee, as the case may be * * *

The argument put forth by respondent and intervenors that it would be "premature" to rule on the applicability of New Jersey's apportionment statute herein is based on the fact that the amount of estate tax subject to apportionment is as yet

[*50] unknown.  But that argument goes to the impact of any apportionment, not to the applicability of the apportionment statute, which raises a question of law subject to resolution by summary judgment.  The problem for petitioner is that we have denied her motion for partial summary judgment with respect to the date-of-gift issue, i.e., we have determined that the LLC units are not includable in decedent's gross estate under sections 2035 and 2038.  Therefore, there is no "property required  to be included in the gross tax estate of a decedent" that has passed to any niece as a "transferee" of the estate.  See N.J. Stat. Ann. sec. 3B:24-2.  Thus, "the ratio * * * [of each niece's] property included in the gross estate * * * to the total property entering into the net estate for * * * [Federal estate tax purposes]", see id. sec. 3B:24-4, is zero, i.e., it appears that no portion of the Federal estate tax ultimately payable by the estate will be apportionable to the nieces, a result that would render the estate tax apportionment issue moot.

It is true, however, as petitioner notes that, pursuant to section 2035(b), decedent's gross estate includes any gift tax payable on decedent's gifts of LLC units to the nieces because those gifts were made within three years of his death.[25]

_____

[25]The gift tax with respect to the 2002 gift of LLC units was, in fact, paid by the nieces, i.e., the 2002 gift, was a net gift to the nieces.  We have held, however, that, in such cases, the gift tax paid by the donee is deemed paid by the decedent-donor so that the tax is includable in the decedent's gross estate under sec. 2035(b).

(continued...)

[*51] Moreover, pursuant to section 2001(b), a "tentative [estate] tax" is imposed, in part, on "the amount of * * * [decedent's post-1976] adjusted taxable gifts", which would include the 2001 and 2002 gifts. It is not apparent to us that an estate tax apportionable to the inclusion of those two amounts related to the LLC units given to the nieces constitutes "an estate tax * * * upon or with respect to * * * property required to be included in the gross estate of a decedent" within the meaning of the New Jersey estate tax apportionment statute. See N.J. Stat. Ann. sec. 3B:24-2. The parties have not had an opportunity to brief that question, however, and we decline to rule on the estate tax apportionment issue until the parties have done so. As a result, we will deny, as premature, petitioner's motion for a ruling that all estate taxes be apportioned to the nieces.

An appropriate order will be issued.

---

25(...continued)
See Estate of Sachs v. Commissioner, 88 T.C. 769, 778 (1987), aff'd, 856 F.2d 1158 (8th Cir. 1988).